**In re GRECIAN HEIGHTS OWNERS' ASSOCIATION, Debtor.**

**Bankruptcy No. 380–02248.**

United States Bankruptcy Court, D. Oregon.

Jan. 12, 1982.

Jeffrey M. Kilmer, Portland, Or., for debtor.

Steve Monogios, pro se, and Walter H. Sweek, Portland, Or., for petitioning creditor.

Rose N. Curtis, pro se, and Ivan Yaklov, for petitioning creditor.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

On June 25, 1980, an involuntary petition for an order for relief was filed herein against Grecian Heights Owners' Association, an Oregon corporation. Steve Monogios was one of the petitioning creditors. The answer of the debtor denied the allegations of the petition and asserted a claim for costs, attorney fees and damages. Following the trial an order was entered denying the petition. Later a trial was held upon the questions of costs, attorney fees and damages. At this later trial the debtor appeared by its attorney, Jeffrey M. Kilmer, the petitioning creditor, Steve Monogios, appeared in person and by his attorney, Walter H. Sweek, and the petitioning creditor, Rose N. Curtis, appeared in person and by her attorney, Ivan Yaklov.

The history of the events which preceded the filing of the involuntary petition is set forth in Findings of Fact and Conclusions of Law entered by William L. Jackson, sitting as judge in a suit in the Circuit Court of the State of Oregon for the County of Umatilla entitled Steve Monogios and Roberta Monogios, Plaintiffs, vs. Grecian Heights Owners' Association, an Oregon corporation, et al., Defendants, No. 22,083. A copy of these findings and conclusions were admitted in evidence in the trial in this court upon the involuntary petition and a copy thereof is attached to this memorandum opinion.

The evidence presented in this court shows that following the entry of his findings and conclusions by Judge Jackson, Monogios contacted 25 lawyers seeking to find an attorney to represent him further in his purported claim against the Association. Being unable to find a lawyer who was willing to represent him, Monogios turned to Everett Thoren for advice. Previously Monogios had relied upon the advice of Thoren during the trial of No. 22,083. Thoren advised Monogios that he was losing his case, which resulted in Monogios walking out prior to the conclusion of the trial. Thoren had represented to Monogios that

while he was not admitted to the practice of law, he was an expert in constitutional law. He advised Monogios that if he were to file petition in bankruptcy against the Association he could have his claim against the Association retried in the bankruptcy court, and it being a court of equity, Monogios could receive justice there. Acting upon this advice Monogios had Thoren prepare an involuntary petition which Monogios, Curtis and one other person signed. The filing of the petition gave rise to the present proceedings. The evidence shows that Monogios had reason to question the competence of Thoren prior to the filing of the involuntary petition.

11 U.S.C. § 303(i) provides:

"(i) If the court dismisses a petition under this section other than upon consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith for—

(A) any damages proximately caused by such filing; or

(B) punitive damages."

■ It is clear from this section that the debtor is entitled to an award of costs and a reasonable attorney fee under § 303(i)(1)(A) and § 303(i)(1)(B). Subsection (1)(C) has no application in this case. Subsection (i)(2) is applicable if the petition was filed in bad faith. Even if the evidence establishes bad faith, no recovery under subsection (2)(A) can be had for the reason that no evidence was presented to show any damages suffered by the debtor. The question then remains whether a judgment for punitive damages should be entered under subsection (2)(B).

The Bankruptcy Reform Act of 1978 does not define the term "bad faith". The prior Bankruptcy Act had no provision similar to subsection (2). The legislative history of the Reform Act is not of any assistance in defining what Congress meant by the term "bad faith". The principal difficulty in this case is whether the test of bad faith should be an objective test or a purely subjective test. Before reaching a conclusion upon this question the court feels it necessary to examine further the evidence presented as it may relate to the motive of Monogios in filing the involuntary petition.

The fourth amended complaint upon which No. 22,083 was tried sets forth the claims upon which Monogios was relying. (Ex. 1). Briefly it contends that in return for the promise of the Association to deed to him preserved area # 11, he built a swimming pool, a tennis court, and a golf course. He sought an order vesting preserved area # 11 in him, or, in the alternative, that he have judgment against the Association for the costs of those improvements. Judge Jackson held that Monogios could not recover under either of the alternatives principally because of the declaration which was filed by Monogios when the planned unit development was created. The evidence shows that as late as October 18, 1980, Monogios still believed that he was not bound by Judge Jackson's decision in No. 22,083. (Ex. 26). This court finds that Monogios did not file the involuntary petition for the purpose of harrassing the Association or its members but did so believing that he could have his purported claim against the Association retried in the bankruptcy court. Under a purely subjective test the court herein would be unable to find that Monogios acted in bad faith.

■ This court believes that bad faith should be measured by an objective test. The determination should be measured by what a reasonable person would have believed. The damage to a debtor from the filing of an unfounded involuntary petition is the same whether it is filed by a reasonable person acting in bad faith or by one who

is so unreasonable that he proceeds in disregard of competent advice that his proposed course of action is without merit.

At the first trial in this case which resulted in a dismissal of the petition, this court tried in vain to explain to Monogios that having instituted No. 22,083 he was bound by the decision of Judge Jackson in that case, that he could not retry his purported claim against the Association in the bankruptcy court, and that the courts in Greece had no in rem jurisdiction to determine the ownership of real property in the State of Oregon. Judge Jraguen, in a contempt hearing on October 18, 1980 (Ex. 26) had a similar experience. On May 30, 1979, Monogios addressed a letter to the Oregon State Bar Association complaining of improper actions of three attorneys who had represented him or from whom he sought advice and four attorneys who had at various times opposed him. (Ex. 17). These matters and other evidence presented demonstrate that Monogios is unwilling to be bound by his own actions, is unwilling to accept the advice of anyone who disagrees with him, and is quick to imagine that anyone whom he chooses to represent him but who is unable to accomplish his desired ends and anyone who opposes him is acting with an improper motive. While the trial of the petition and the hearing on October 18, 1980 occurred after the filing of the petition, and the question here involved is whether the petition was filed in bad faith, these matters are relevant to the attitudes and motives of Monogios at the time of the filing of the petition. They explain how, after contacting 25 lawyers, he settled upon a non-lawyer for advice. Such was not the action of a reasonable person. Monogios obviously knew that the filing of the petition would result in expense and inconvenience to the Association or its members. Yet he was willing to take this action upon the advice of Thoren, whom he had some reason to believe, in addition to the fact that he had not been admitted to practice, was not competent to give legal advice. It is not sufficient for Monogios to say that he did not realize that the petition was unfounded. A reasonable person would not act upon legal advice given by a person such as Thoren. The court therefor finds that Monogios filed the involuntary petition in bad faith and concludes that an award of punitive damages would be appropriate.

Regarding the amount of attorney fees and costs, it was stipulated that the court could make a determination upon the basis of the affidavit of Jeffrey M. Kilmer with the deletion of 10.7 hours mentioned in the letter to the court from Arminda J. Brown dated August 6, 1981. A review of the affidavit shows that Kilmer has devoted 69.6 hours to this matter and has charged his client, the Association, at the rate of $70 per hour. The court finds that this hourly charge is reasonable. The affidavit also shows that $1,307.08 was expended in costs. The court therefor finds that the debtor is entitled to judgment against Monogios in the amount of $4,872 as attorney fees and $1,307.08 as costs.

Turning then to the matter of punitive damages. Punitive damages are awarded not for the purpose of compensating the other party for actual loss but rather as a deterrent to similar actions in the future. Since such an award is punitive in nature, the financial condition of the person against whom such an award is made becomes relevant. At the trial the only evidence received regarding the financial condition of Monogios was his unsolicited statement to the court that he was a millionaire. Monogios must be made to realize that, although he has the perfect right to pursue whatever claims he may have now or in the future in a court of competent jurisdiction, he should do so only upon the advice of an attorney admitted to the practice of law. He must realize that it is not proper to ignore the advice of persons trained in the law and cause expenses and inconvenience to others by the institution of legal proceedings founded on the advice of one not qualified to give such advice. In view of the fact that judgment will be granted against him for $6,179.08 representing the attorney fees and costs of the association and that he has incurred further costs and attorney fees for his own representation in this matter, it

should not require a large sum in punitive damages to convince him that in the future he should not institute legal action against another without first obtaining competent legal advice. The court concludes that an award of $1,000 in punitive damages should be a sufficient deterrent to accomplish this purpose.