**In re ADVANCE PRESS & LITHO, INC., aka Advance Press, Debtor.**

**No. 84 B 0604 G.**

United States District Court, D. Colorado in Bankruptcy.

Sept. 20, 1984.

Marilyn Martin, Colorado Springs, Colo., for debtor.

Arthur H. Baker, III, Colorado Springs, Colo., for petitioning creditors.

## ORDER RE: ATTORNEY'S FEES, COSTS AND DAMAGES

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER came on for trial on the Counterclaim of Advance Press, the alleged debtor herein, for damages and attorney's fees as the result of filing an Involuntary Petition. These damages are sought against the three petitioning creditors, Leonard T. Dorsch, Douglas T. Smith and Wanda Wallace.

The Involuntary Petition under Chapter 7 of the Bankruptcy Code was filed on February 13, 1984. Subsequently, following trial in this court on March 9, 1984, the Involuntary Petition was dismissed. The matter was then set over for further proceedings on Advance Press' Counterclaim for attorney's fees, costs and damages, pursuant to 11 U.S.C. § 303(i). Trial on that matter was concluded on August 31, 1984.

Under 11 U.S.C. § 303(i), there are two types of judgments, upon two separate bases, which may be granted in the event an Involuntary Petition is dismissed. First, under § 303(i)(1), it is provided as follows:

"303(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title;'"

Second, if the evidence demonstrates bad faith on the part of one or more of the petitioners, damages, including punitive damages, may be assessed pursuant to § 303(i)(2). That section provides as follows:

"§ 303(i)(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages."

As can be seen from a reading of these two subsections, the award of costs, fees and damages is not automatic under either subsection. It is discretionary with the court. An award under § 303(i)(2) should only be made upon a finding that the petitioner filed the petition in bad faith. *Camelot, Inc. v. Hayden*, 30 B.R. 409 (U.S.D.C. E.D.Tenn.N.D.1983); 11 U.S.C. § 303(i)(2). The award of fees and costs under § 303(i)(1) and the award of compensatory damages or punitive damages under § 303(i)(2) are not exclusive. These damages may be allowed alternatively or cumulatively. *In re Camelot, Inc.*, 25 B.R. 861

(Bankr.Tenn.1982); In the *Matter of Ramsden,* 17 B.R. 59 (Bankr.N.D.Ga.1981); H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) 324; S.Rep. No. 989, 95th Cong. 2d Sess. (1978) 34, U.S.Code Cong. & Adm.News 1978, p. 5787.

The evidence here reflects that costs in the amount of $240.00 and attorney's fees in the amount of $16,400.00 were incurred by the debtor as a direct result of the Involuntary Petition filed against Advance Press. This Petition resulted in the necessity that Advance Press retain counsel to investigate, research and defend against this Petition. It also became necessary for counsel to devote extensive time to responding to discovery initiated by the petitioning creditors. Much of this discovery was unnecessary, and some of it was stricken by the court. Additional time was necessitated in communication with other creditors and negotiations with the attorney representing petitioning creditors. Motions and briefs were filed by both sides, and the hearings in this matter have consumed the better portion of three different days.

There was no contest with respect to the reasonableness or necessity of the debtor's fees or costs. However, the fees seem somewhat extraordinary to the court. It is noted that the hostile feelings of the parties in this case generated much more activity in connection with this Involuntary Petition than might otherwise be expected. The hourly fees charged by debtor's counsel were $100.00 per hour in the office and $200.00 per hour for court time. No evidence was presented to substantiate the reasonableness of the fees, the reasonableness of the time expended, or to support the relative expertise of counsel. Part of this appears to be due to the lack of any real contest in this regard. However, in my view, based upon the totality of the record in this matter, the hourly rate for court time should be reduced, and some of the preparatory work appears to have been more than should be required by a person with bankruptcy expertise. The result achieved on behalf of the debtor was, of course, excellent. Nevertheless, a reduc-tion of the fee to be charged to the debtor and to be assessed against the petitioners is in order.

■ Few reported decisions have assessed fees and costs without a showing of bad faith. However, bad faith on the part of a petitioning creditor is not a condition precedent to such an award in an involuntary bankruptcy filing. *In re Allen Rogers and Co.,* 34 B.R. 631 (Bankr.S.D.N.Y.1983); *In re Camelot, Inc., supra.* In *Allen Rogers and Co., supra,* the court considered the imposition of costs and attorney's fees notwithstanding the petitioners good faith, but declined to make such an award under the circumstances of the case. The circumstances here make the award justified.

The filing of an Involuntary Petition should not be lightly undertaken. Even the good-faith filing of such a petition creates onerous circumstances for a debtor. Costs and fees are incurred at a time when a debtor can ill afford to assume more financial burdens. The court in *In re SBA Factors of Miami, Inc.,* 13 B.R. 99 (Bankr. S.D.Fla.1981) noted: "It usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." *In re SBA Factors, supra,* at page 101. When petitioning creditors file such a petition, they knowingly assume the burden of proof to establish that a debtor is not paying its debts as they become due, or that a custodian was appointed or took possession of the debtor's property within 120 days before the petition was filed. It is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created.

■ At the conclusion of trial on the issue of fees, I found that the circumstances here justified the award of costs and

attorney's fees against all three petitioners under § 303(i)(1). It is not necessary that the Involuntary Petition be frivolous or meritless to award costs and fees under this subsection, as that is not a stated condition. Additionally, there is no need to make a finding of bad faith on the part of one or more of the petitioners under this section. That is covered under § 303(i)(2). The question to be determined under § 303(i)(1), having found that fees should be awarded, is what award is reasonable under these circumstances.

The hearing on imposition of fees was held on August 31, 1984. The attorney's fees here were incurred from the date of filing to the date of that hearing. Approximately $6,800.00 was incurred through March 9, 1984, when the Involuntary Petition was dismissed. From then until April 2, 1984, another ten hours per week was incurred, for a total of approximately thirty hours. This time, computed at $100.00 per hour, adds an additional $3,000 to the fees. The remainder appears to have been incurred thereafter.

■ I find nothing in the Code or case authority limiting an award to the date of dismissal. Preparation for and attendance at the hearing on attorney's fees, costs and damages are also part of the matters which are occasioned as a result of an Involuntary Petition. As such, they are compensable under § 303(i).

■ The fees incurred were for consultation with the client, communication with other counsel and creditors, research, drafting pleadings and motions, responding to discovery, correspondence, travel, court appearances and briefs. Much of this is delineated in the responses to interrogatories, Creditors' Ex. 1. In my view, the sum of $200.00 per hour for court time is not warranted here. Thus, I have considered this at $100.00 per hour. Likewise, some of the preparation time, creditor contact and conferences appear to me to be excessive. Time expended in consultation with an attorney, Rex Johnson, and with "U.S. District Judge Moore" is not properly assessable. Some of the creditor contact was more for public relations between the debtor and creditors than should be necessary as a result of the bankruptcy filing, itself. Thus, this has been reduced in my consideration. Contact with the SBA and a "lessor of equipment" should not be charged. The task of evaluation is rendered more difficult as a result of a lack of allocation of fees to various tasks. Thus, I have reviewed pleadings, motions, briefs, evidence, and have considered court time and arguments of counsel in arriving at the determination of an appropriate award of fees to be assessed against the petitioners. Based upon this analysis, it is my conclusion that the sum of $10,000.00 by way of attorney's fees, together with the costs amounting to $240.00, is a reasonable fee resulting from this Involuntary Petition.

These fees should be borne by all three petitioning creditors. However, it is not necessary that such fees should be borne equally. Resolution of what portion of the fees should be borne by each creditor involves addressing the issue of bad faith.

The term, "bad faith", is not defined in the Bankruptcy Code. There are at least two views as to what constitutes bad faith. One line of authority uses "bad faith" in the sense of malice, or ill will. *See, Camelot, Inc. v. Hayden, supra; In re Camelot, Inc., supra.* These cases adopt the Black's Law Dictionary definition of bad faith, citing examples such as "where the petition is ill advised or motivated by spite, malice, or a desire to embarrass the debtor. 2 Collier on Bankruptcy, ¶ 303.12 (15th ed. 1979)." *Camelot, Inc. v. Hayden, supra,* at page 411.

There is a second line of authority which looks to whether the creditor's actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures. *In re Allen Rogers and Co., supra; In re SBA Factors of Miami, Inc., supra.* The court in *In re Grecian Heights Owners Association,* 27 B.R. 172 (Bankr.Ore.1982), tried to adopt an "objective test" of bad faith by making a determination measured by what a reasonable person would have believed or would have

done. However, it appears to me that a determination based upon such a factor is, itself, subjective. In the final analysis, whether a party acted in bad faith or not is essentially a question of fact to be determined by the court.

The evidence here reflects the Involuntary Petition was filed because these three petitioners were upset over non-payment of wages, and this was their effort to collect those wages. The owners of Advance Press were making every effort to keep the business afloat, pay their bills, and put the business in a posture where these wages could be paid. I found on the record at the conclusion of trial that one petitioning creditor, Douglas T. Smith, was not in bad faith in participating in the Involuntary Petition. The reason for this is that while he was still working at Advance Press, he specifically told the owners he felt they were ill equipped to handle the "Texas Longhorn Account." This was Advance Press' largest account. Mr. Smith doubted the account could be serviced at a profit. Nevertheless, he exerted his best efforts to assist in every way. He even continued on in his employment for several days after his last paycheck. Mr. Smith mistakenly claimed the sum of $27,000 due and owing to him. However, he candidly testified that the claim should have been $2,700, and expressed great concern at the error. He initiated no deleterious action against Advance Press other than the filing of this Petition. The Petition was filed after consultation with and upon the advice of counsel. Counsel's advice to proceed was, in this instance, unwarranted and inappropriate. I cannot find bad faith on the part of this petitioner.

Leo Dorsch, a second petitioning creditor, likewise informed the owners of Advance Press that they had insufficient equipment to accomplish the Texas Longhorn project at a profit. However, he made every effort to assist Advance Press in proceeding with this account. He remained on the job and completed work even after other employees had departed. While he did utilize bankruptcy as a method to collect back wages, he was very reluctant to "go to court" and only took the action when he felt it was necessary to avoid dissipation of Advance Press' assets to the point where wages could not be paid. He, like Mr. Smith, acted on the advice of the same counsel. Additionally, it is noted that before proceeding with an Involuntary Petition, Mr. Dorsch had presented the matter to the Wage and Labor Board in an effort to find a proper alternative to a resolution of his dispute. He took no action against Advance Press out of malice or ill will toward that entity or its owners. I can find no bad faith on the part of Mr. Dorsch.

■ Wanda Wallace, the third petitioning creditor, is another matter. Mrs. Wallace was the moving force behind this Involuntary Petition. She was the secretary-bookkeeper of the company, and had worked under the old ownership as well as the current ownership. She claimed to be owed approximately $1,050.00 in wages when she left employment in February, 1984. Her hostility toward the owners of Advance Press was demonstrated in her testimony, both on the merits of the Involuntary Petition and at the trial on damages to the debtor. Her hostility was also demonstrated not only in her actions against Advance Press before the Petition was filed but also during the proceedings, as well as the contacts she persisted in making with creditors even after the Petition was dismissed.

The Petition was dismissed on March 9, 1984. Thereafter, on April 4 through 6, 1984, Mrs. Wallace contacted approximately twenty creditors to discuss Advance Press, its owners and its financial situation with these creditors. Her stated purpose in testimony was that she disagreed with earlier testimony that had been given by Leland Watson, who, together with his wife, owned Advance Press. At the trial on the merits on the Involuntary Petition, Mrs. Wallace testified in support of the proposition that her employer was not generally paying its debts as they became due. As this debtor's secretary-bookkeeper, Mrs. Wallace was in a position to know that Mr.

and Mrs. Watson had taken over the business in July of 1983 and inherited some obligations they didn't realize were being imposed upon them by the prior owners. She was also in a position to know of the considerable efforts the new owners had made to take care of those obligations and keep the business in operation. Mrs. Wallace was in a position to know the rent had been current up until the month of the hearing, that utilities were maintained on a current basis, that the telephone had been maintained on a current basis, and that other debts were being paid, although it is true there was difficulty in meeting some of the business's obligations.

Armed with this knowledge, Wanda Wallace did very little to ease her employer's difficulties. When she left her employment, she took with her copies of various unemployment forms and began her clandestine investigation to drive her employer into bankruptcy. She continued with these efforts even after the bankruptcy was dismissed. She stated the only reason she continued to contact creditors after the bankruptcy was dismissed was because Mr. Watson had testified in a manner which she felt was incorrect. She did state that her continued efforts were her attorney's idea. On one occasion after Mrs. Wallace left employment, but before the action was dismissed, she came into the business premises and threatened to "close down this business in 15 minutes" if she didn't get certain time cards or money for other employees.

Based upon the testimony and the other evidence in this matter, I am convinced that Wanda Wallace was motivated by ill will and malice, albeit upon advice of counsel, and that these factors motivated her to participate in the Involuntary bankruptcy against Advance Press.

While I do not discount the possibility that under some circumstances bad faith may be shown in the filing of an Involuntary Petition as a substitute for normal collection measures, I do not base my finding on that factor in this instance. Rather, a frivolous and groundless petition, like a frivolous and groundless lawsuit, can be the subject of an award for compensatory or punitive damages under § 303(i)(2). The knowledge possessed by Mrs. Wallace would make the petition as far as she is concerned frivolous and groundless. Moreover, the most important factor with respect to Mrs. Wallace is her motivation founded upon malice and ill will in this instance. That is a clear expression of bad faith.

Having determined that Wanda Wallace was in bad faith in filing an Involuntary Petition, it does not automatically follow that damages proximately caused by this filing should be imposed. It also does not follow that punitive damages, either alternatively or cumulatively, should be imposed. This is still discretionary with the court. *In re Allen Rogers and Co., supra.*

Any award of costs and fees under § 303(i)(1) may be granted "against the petitioners." There is a paucity of authority with respect to when, under what circumstances and specifically against whom an award under this subsection should be made. I interpret this provision as contemplating a "no-fault" standard, whereby an award, if at all, should be imposed against all petitioners, jointly and severally. An award of damages under § 303(i)(2), on the other hand, may be awarded against "any" (one or some) petitioner who filed in bad faith. This reasoning seems to be supported in *In re Grecian Heights, supra,* and *In re Camelot, supra.* The award may be imposed against one, some, or all petitioning creditors. The judgment may be an individual, without being a joint, obligation, depending upon the court's reasoned discretion.

A damage award under § 303(i)(2) may be for compensatory or punitive damages, or both. *In re Camelot, supra; In the Matter of Ramsden, supra.* State law provides that exemplary damages should bear some reasonable relation to actual damages. *Arkansas Valley Alfalfa Mills, Inc. v. Day,* 128 Colo. 436, 263 P.2d 815 (1953). *See also, Wegner v. Rodeo Cowboy's Association,* 290 F.Supp. 369 (D.C. Colo.1968), aff'd. and *reh'g denied,* 417

F.2d 881 (10th Cir.1969), *cert. denied*, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 6 (1970). However, the Bankruptcy Code specifically authorizes, in § 303(i)(2), punitive damages even in the absence of or in addition to actual damages. *In re Camelot, Inc., supra; In the Matter of Ramsden, supra.* This was specifically ordered in *In re Grecian Heights, supra.*

In *Grecian Heights*, the court discussed the purpose of punitive damages—to deter similar acts in the future. This deterrent should be directed not merely to the petitioning creditor in the case at bar, but also should serve as an example for similar circumstances in future cases. Punative damages also are assessed as punishment to the defendant-creditor for wrongdoing in filing the Involuntary Petition in bad faith. *In re Camelot, supra.*

Finally, it is noted that the statute here does not provide for an award against the petitioning creditors' attorney. *In re Grecian Heights, supra; In the Matter of Ramsden, supra.* I make no finding as to whether such an award might be ordered under § 105, or any other provisions of the Bankruptcy Code. When a judgment is entered against creditors whose actions were predicated upon faulty legal advice, the creditor's remedy is elsewhere to be resolved.

■ Damages sought by the debtor here are speculative. The compensatory damages must be proved by the debtor to be awarded. *In re SBA Factors of Miami, Inc., supra.* The debtor seeks damages in an amount of $37,000.00 for loss of the Longhorn Journal Contract, which it claims would have been worth over $240,000.00 in the future. However, the evidence before me suggests some doubt whether this debtor could have successfully serviced this contract even in the absence of a bankruptcy petition. Other damages sought for loss of business, for separate litigation commenced against this debtor, and for a poor credit rating are simply not supportable by the evidence. This business was assumed by Mr. and Mrs. Watson in July, 1983. The Involuntary Petition was filed on March 9,

1984. The business, under Watson's management, was still a new and untried business, with an insufficient earnings history to establish any reliable basis for an award of damages. *See, Lee v. Durango Music,* 144 Colo. 270, 355 P.2d 1083 (1960). No actual damages, proximately caused by filing the Involuntary Petition in this case, has been proved by the evidence, other than the costs and attorney's fees incurred in this matter.

The question of punitive damages must then be examined. The purpose of these damages and the circumstances under which they are to be the subject of an award has previously been discussed. The imposition of these damages must be considered in connection with the award of other damages and fees if the purpose of punitive damages is to be effective and yet not unduly harsh.

Based upon the evidence, the testimony, and the entire record herein, it is my conclusion that any award under § 303(i)(1) should be entered against all petitioners. Additionally, an award under § 303(i)(2) should enter against petitioning creditor, Wanda Wallace. I have previously determined that a reasonable attorney's fee of $10,000 should be assessed in this case. That is also the reasonable value of the services to be charged under 11 U.S.C. § 329(b). Any excess charged and paid over that amount shall be returned to the debtor. If the amount has not been paid, the charges to the debtor shall not exceed that amount. A portion of these fees will be assessed against all petitioners as a reasonable fee to be awarded under § 303(i)(1). The remainder will be imposed against Wanda Wallace as damages for her bad faith filing under § 303(i)(2).

Accordingly, judgment shall enter against all petitioning creditors for costs in the amount of $240.00 and attorney's fees of $8,000, for a total of $8,240.00. Additionally, the remainder of attorney's fees in the amount of $2,000.00 is an element of damage proximately caused to this debtor by reason of the filing of an Involuntary Petition in this case. This amount is

awarded as a judgment in favor of the debtor and against petitioning creditor, Wanda Wallace, under 11 U.S.C. § 303(i)(2)(A). No further damages are assessed against Mrs. Wallace, as the compensatory damages awarded here constitute sufficient sanctions that no further assessment is appropriate.