UNITED STATES FIDELITY & GUARANTY COMPANY,
Appellant,

v.

DJF REALTY & SUPPLIERS, INC., Appellee.

UNITED STATES FIDELITY & GUARANTY COMPANY,
Appellant,

v.

VINCOL CONSTRUCTION CO., INC., Appellee.

UNITED STATES FIDELITY & GUARANTY COMPANY,
Appellant,

v.

VINCENT J. FASANO, INC., Appellee.

Nos. 85–CV–1294 to 85–CV–1296.

United States District Court.
N.D. New York.

March 24, 1986.

As Amended April 3, 1986.

Goldberg, Harding & Talev, Syracuse, N.Y., for appellee; Harold P. Goldberg, of counsel.

Menter, Rudin & Trivelpiece, Syracuse, N.Y., for appellant; Gerald J. Mathews, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

Appellant, United States Fidelity and Guaranty Company ("USF & G"), appeals from the Bankruptcy Court's June 27, 1985 decision dismissing the involuntary petitions filed against Vincent J. Fasano, Inc. ("Fasano"), DFJ Realty & Supplier, Inc., and Vincol Construction Co., Inc. ("the alleged debtors"). For the reasons discussed below, the Bankruptcy Court's decision is reversed insofar as the finding of bad faith on the part of petitioning creditor USF & G. Further, the involuntary petitions are reinstated with USF & G, Custom Environmental and Edward Schalk & Son, Inc. ("Schalk") as the petitioning creditors.

## BACKGROUND

On May 18, 1982, petitioning creditors, USF & G, Schalk and Tele Systems Management, filed involuntary petitions against the alleged debtors and against Vincent and Mary Fasano personally. On November 21, 1984, an additional creditor, Custom Environmental, was allowed to join in the petition.

USF & G is a bonding company, which wrote bonds for Fasano, a construction company. In 1981 Fasano began experiencing severe financial difficulties, and in 1982 Fasano was terminated from several contracting jobs. Shortly thereafter, Fasano became unable to pay its subcontractors and could not pay for the day to day operations of its own offices. At that time, USF & G, as Fasano's bonding company, began evaluating and paying claims made by various Fasano subcontractors. Fasano's financial situation progressively worsened, and in the spring of 1982 USF & G was

inundated with claims from subcontractors and suppliers on virtually every Fasano project. By May 18, 1982 (the petition date), USF & G had paid out $2,609,335.00 in claims.

Fasano, unable to meet its financial obligations, sought USF & G's assistance. USF & G then advised Fasano that Consultant Management Associates ("CMS") would be hired to analyze Fasano's financial situation. Eventually USF & G elected not to provide financial assistance or additional bonding to Fasano, but decided to proceed with an involuntary petition under Chapter 11 of the Bankruptcy Code ("Code").

Once USF & G decided to institute an involuntary proceeding, USF & G's attorneys asked a USF & G claims manager to provide a list of creditors not paid by Fasano as of May 9th or 10th, 1982. After reviewing that list, USF & G's attorneys contacted John Schalk asking him to join as a petitioning creditor, which he did, on behalf of Schalk. Schalk was a subcontractor on one of Fasano's jobs and was owed $2,509.35 on the petition date. Mr. Schalk was not promised anything in return for joining as a petitioning creditor. He simply joined the petition because he thought it was a way he might be able to obtain payment of the money owed Schalk.

Prior to being contacted by USF & G's attorneys, Mr. Schalk had sent a letter to USF & G asserting a Miller Act bond claim for the amount due pursuant to 40 U.S.C. § 270b (1969). Initially, CSM instructed USF & G to pay Schalk's claim. A USF & G claims manager reviewed Schalk's claim, however, and found a discrepancy between the amount claimed and the amount owed. Therefore, USF & G requested that CMA recheck the entire claim. CMA then verified that discrepancy and further indicated that Schalk's Miller Act claim was barred by the statute of limitations, and advised USF & G not to pay on that claim.

The Bankruptcy Court specifically found that the alleged debtors were not paying their debts as they became due in accordance with § 303(h)(1) of the Code. Further,

the Bankruptcy Court found that Custom Environmental qualified as a petitioning creditor, but Tele Systems Management did not. The Bankruptcy Court disqualified USF & G as a petitioning creditor based on the court's finding of bad faith on the part of USF & G in soliciting Schalk as a petitioning creditor. Although the alleged debtors argued Schalk should be disqualified as a petitioning creditor because USF & G's solicitation was not conducted in good faith, the Bankruptcy Court did not make any specific finding regarding Schalk's statuts' as a petitioning creditor. Instead, the court simply dismissed all the petitions based upon its finding of bad faith by USF & G.

## DISCUSSION

There are two standards of review when a case is appealed from the bankruptcy court to the district court. 28 U.S.C. § 157 (Supp.1985). If a case is on appeal from a final or dispositive order rendered pursuant to the provisions of § 157, the applicable standard of review is based upon Bankruptcy Rule 8013. That rule provides that a district court may *not* set aside a bankruptcy court's finding of fact, unless those findings are clearly erroneous. When findings of fact are based upon an incorrect legal standard improperly applied, however, they are subject to plenary review on appeal. *In re Osborne*, 11 CBC2d 1349, 1358, 42 B.R. 988 (W.D.Wis.1984) (citations omitted).

In the present case, pursuant to 28 U.S.C. § 157(b)(1) (Supp.1985), the Bankruptcy Court entered a final order dismissing the involuntary petitions. Section 157(b)(1) provides:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

As an involuntary petition brought pursuant to Chapter 11 of the Code, this was clearly a "case under title 11" over which the Bankruptcy Court had jurisdiction to

render a final order, which is appealable to this court pursuant to 28 U.S.C. § 158 (Supp.1985). Therefore, this court will consider all findings of fact based upon the clearly erroneous standard of review.

■ Appellant raised a number of issues on this appeal. The only issue this court finds it necessary to address, however, is whether the Bankruptcy Court's finding of bad faith on the part of USF & G was clearly erroneous. Bad faith in an involuntary bankruptcy proceeding is a factual issue. *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 704 (Bkrtcy. D. Colorado 1984). As such, that finding is subject to the clearly erroneous standard of review.

■ The Bankruptcy Reform Act of 1978 does not define the term bad faith and case law is scant. It is clear, however, that there is a presumption of good faith in favor of the petitioning creditor, and thus the alleged debtor has the burden of proving bad faith. *In re Crown Sportswear, Inc.*, 575 F.2d 991 (1st Cir.1978). USF & G argues that the majority of courts which have addressed the issue of bad faith have done so based upon a subjective standard. Therefore, USF & G concludes the Bankruptcy Court's use of the objective standard was "clearly erroneous." The alleged debtors argue that although the Bankruptcy Court specifically stated it was "utilizing an objective standard," the court actually applied both standards, and thus no error resulted.

■ An objective standard considers whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding. *In re Grecian Heights Owners' Association*, 27 B.R. 172, 173 (Bankrtcy. D. Oregon 1982). (The only reported court decision using solely the objective standard in determining bad faith.) A subjective standard considers the petitioning creditor's motivation for filing the petition. *Basin Elec. Power Co-op v. Midwest Processing Co.*, 47 B.R. 903, 909 (D.N.D.1984), *cert. denied* — U.S. ——, 106 S.Ct. 854, 88 L.Ed.2d 894 (January 21, 1986). In *Basin, supra*, the district court held that in deciding the issue of bad faith, the bankruptcy court should have considered petitioner's subjective motivations *and* its conduct. *Id.* The court reasoned:

> Considering subjective motivations of petitioning creditors is analogous to considering possible ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. It has long been recognized that using the Bankruptcy process to promote individual interests in a manner not consistent with the legislative purpose of the bankruptcy code is an abuse of the jurisdiction of the bankruptcy courts. (citations omitted.)

*Id.* This court agrees that the better practice is for bankruptcy courts to inquire into *both* the creditor's conduct, as well as into its motives for filing the petition. By so doing, bankruptcy courts will be able to insure that the legislative intent of the Code is carried out. Specifically, that petitioning creditors are not abusing the bankruptcy court's jurisdiction.

In considering petitioning creditors' motivation, courts have generally required nearly unconscionable behavior before finding bad faith. For example, in *In re Trans High Corporation*, 3 B.R. 1, 4 (Bkrtcy.S.D. N.Y.1980), the court required a showing that the petitioning creditor was consciously and "wickedly indifferent" to the truth or falsity of allegations contained in the petition, before it would find bad faith by the creditor. Similarly, in *In re Howard, Neilsen & Rush, Inc.*, 2 B.R. 451 (Bkrtcy. N.D.Tenn.1979), the court found no bad faith in the absence of proof that the petition was "filed groundlessly with intent to harass, vexatiously or oppressively."

Finally, in *In re Rite-Cap, Inc.*, 1 B.R. 740 (Bkrtcy.D.R.I.1979), the court stated that if the original petition was a sham, prepared with a view of later being supported by intervention, joinder of additional creditors should be denied as the original petition was filed in bad faith. *Id.* 741–42 citing *Pianta v. Reich Co.*, 77 F.2d 888, 891 (2d Cir.1935). The court also noted that when a petition is filed with knowledge of

its falsity that is indicative of bad faith, the petition will be dismissed as a fraudulent attempt to confer jurisdiction on the bankruptcy court. *Id.* at 742. Based on the foregoing, it is clear that alleged debtors have a heavy burden of proof on the issue of bad faith.

■ A review of cases discussing the bad faith issue also shows that courts primarily focus on *why* the petition was filed rather than on how, procedurally, the petition was brought. That is so regardless of which standard a court is using to determine whether bad faith exists. And that focus is consistent with the Code's requirement of a showing that the debtor is generally not paying its debts as they become due.

In *In re Advance Press & Litho, Inc.,* 46 B.R. 700 (Bkrtcy.D.Col.1984), the court engaged in a detailed analysis of why each petitioning creditor participated in the involuntary proceeding. The court found one petitioning creditor acted in bad faith because her motivation was founded upon malice and ill will towards the alleged debtor. Moreover, that petitioning creditor was the secretary-bookkeeper of the alleged debtor company, and as such she knew that the alleged debtor was generally paying its debts as they became due. The court refused to find bad faith on the part of the other petitioning creditors, however, because they did not act out of spite or malice, and one creditor acted upon advice of counsel. *Id.* at 704. The court did not consider the procedural aspects of how the petition was brought, however.

Likewise, in *In re Grecian Heights Owers' Association,* 27 B.R. 172 (Bkrtcy. D. Oregon 1982), although the court used an objective standard, it nevertheless considered whether filing of the petition was unfounded, or was done in disregard of reason. The *Grecian* court found bad faith by a petitioning creditor who filed a petition upon the advice of a non-lawyer after he had contacted 25 lawyers and a judge who all advised against the involuntary proceeding. In *Grecian, supra,* the court specifically examined the attitudes and mo-

tives of the petitioning creditor at the time of filing the petition. *Id.* at 174. Again, the court scrutinized the reasons for filing the petition, not the manner and method in which it was brought.

■ Moreover, even in those cases considering *how* the petition was brought, it is clear that bad faith will not be found unless there is proof that a petitioning creditor's solicitations were composed of false statements or the solicitation itself amounted to fraud. *See In re Midwest Processing Co.,* 41 B.R. 90 (Bkrtcy.D.N.D. 1984), *rev'd. on other grounds Basin Elec. Power Co-op v. Midwest Processing Co.,* 47 B.R. 903 (D.N.D.), *cert. denied* — U.S. ——, 106 S.Ct. 954, 88 L.Ed.2d 894 (1986); and *In re J.V. Knitting Services, Inc.,* 4 B.R. 597, 598 (Bkrtcy.S.D.Fla.1980). Additionally, evidence that intervening creditors felt undue pressure to join in the petition or evidence that they were harassed may also be indicative of bad faith solicitation. *In re Midwest Processing Co.,* at 104. On the other hand, as the *Midwest* court also noted:

> It would be idealistic for this court to believe that three creditors would voluntarily travel to the bankruptcy court and meet on its doorstep with an identical purspose, to commence an involuntary bankruptcy proceeding against an alleged debtor.

*Id.* at 103. Thus, the mere fact that one petitioning creditor sought out others to join in the petition does not give rise to a finding of bad faith.

■ After carefully reviewing the record, this court finds that the Bankruptcy Court's finding that USF & G acted in bad faith in soliciting Schalk as a petitioning creditor is clearly erroneous, and must be reversed. First, the Bankruptcy Court did not apply the correct standard in ascertaining whether USF & G acted in bad faith. Instead, the Bankruptcy Court stated it used an objective standard. As discussed above, the proper way for a bankruptcy court to make a determination of bad faith is to consider both an objective and a subjective standard. In that way,

the court can be certain that petitioning creditors are not improperly attempting to invoke the jurisdiction of the court.

Here, there was no indication that the Bankruptcy Court considered USF & G's motivation for filing the petition. Despite the fact that the court explicitly held that the alleged debtors were unable to pay their debts as they became due, the court apparently did not even consider that significant fact in addressing the issue of USF & G's supposed bad faith. What better motive for filing an involuntary petition than that the alleged debtors are not paying their debts as they become due?

Further, as discussed in more detail below, the record clearly established that there were numerous reasons why USF & G would want to instigate an involuntary proceeding. Yet the Bankruptcy Court did not consider *any* of those factors. Instead, the court focused on an incidental element of USF & G's conduct: its solicitation of Schalk as a petitioning creditor. USF & G's actions in soliciting Schalk, however, simply do not amount to bad faith solicitation. There was absolutely no evidence showing that USF & G used false statements to entice Schalk to join in the petition. Nor was there any evidence that USF & G harassed or pressured Schalk into joining the petition. An attorney for USF & G merely called Mr. Schalk and asked if he wanted to join in the petition. Mr. Schalk agreed to join because he thought it would be a way to obtain the money owed Schalk. Clearly USF & G's conduct did not constitute bad faith.

■ Second, even if the objective standard alone was sufficient, the Bankruptcy Court did not properly apply that standard. It did not consider whether a reasonable creditor in USF & G's position would have filed an involuntary petition. More particularly, the Bankruptcy Court did not consider the fact that USF & G paid out $2,609,335.00 in claims; that USF & G was being inundated with claims by many of Fasano's subcontractors and suppliers; that USF & G anticipated that its exposure to loss on all bonds written on behalf of Fasano

would ultimately exceed $5,000,000.00; that Mr. Fasano had threatened to transfer assets and prefer other creditors over USF & G; and that Fasano was unable to meet its financial obligations. Obviously, had the Bankruptcy Court considered those factors, it would have concluded that it was reasonable for USF & G to file the involuntary petition, and that there was no bad faith on the part of USF & G in so doing.

■ Because the Bankruptcy Court did not apply both standards to determine whether USF & G acted in bad faith, this court finds that the Bankruptcy Court's finding in that respect was clearly erroneous. Accordingly, this court reverses that finding and holds that USF & G does qualify as a petitioning creditor.

Section 303(b) of the Code sets forth the requirements for commencing an involuntary petition. In part that section provides that if an alleged debtor has twelve or more creditors, to commence a Chapter 11 involuntary proceeding three or more creditors must join in the petition and qualify as creditors, and they must have aggregate claims of $5,000. 11 U.S.C. § 303(b)(1) (Supp.1985). If the alleged debtor has less than twelve creditors, at least one creditor with a claim of $5,000 is required before an involuntary petition can be filed. 11 U.S.C. § 303(b)(2) (1979).

In the present case, the Bankruptcy Court disqualified USF & G and Tele Systems Management as petitioning creditors. Because the court finds that USF & G does qualify, there are a sufficient number of petitioning creditors, even without TSM. Specifically, as the Bankruptcy Court found, Fasano did have more than twelve creditors, and therefore at least three petitioning creditors with aggregate claims of $5,000 were required. That requirement is now met. There are three creditors with the requisite claims: USF & G has a claim of at least $2,609,335.00 (the amount of claims paid prior to the petition); Custom has a claim of $3,319.00; and Schalk has a claim of $2,509.35. The involuntary petition against Fasano should be reinstated with these three creditors.

Additionally, the petitions against the other alleged debtors, Vincol Construction Co., Inc. and DJF Realty & Suppliers, Inc. should also be reinstated. The Bankruptcy Court found those debtors did not have more than twelve creditors and therefore only one creditor with an aggregate claim of $5,000 would be needed. Here, that creditor is USF & G with a claim of at least $2,609,335.00. Therefore, the other involuntary petitions should also be reinstated.

Accordingly, the court holds that the Bankruptcy Court's decision of June 27, 1985, is reversed with respect to the finding of bad faith by USF & G, and all involuntary petitions are reinstated.

FURTHER, it is hereby

ORDERED, that this matter be remanded to the Bankruptcy Court for further proceedings consistent with this Order.

IT IS SO ORDERED.