**In re EXCHANGE NETWORK CORPORATION, Debtor.**

**Bankruptcy No. 87–B–04107–M.**

United States Bankruptcy Court, D. Colorado.

April 14, 1988.

Gary Bottinelli, Lakewood, Colo., for debtor.

Ron Stock, Northglenn, Colo., for petitioners.

## OPINION AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on a Motion for Attorney's Fees. The fees are requested by the attorney of a proposed debtor under an Involuntary Petition in Bankruptcy. Exchange Network Corporation ("Exchange Network" or "proposed debtor") was the proposed debtor of an Involuntary Petition in bankruptcy filed by three parties, each party ostensibly a creditor of Exchange Network. The Involuntary Petition was dismissed by the Bankruptcy Court, pursuant to a hearing on the merits, September 8, 1987. The proposed debtor consequently seeks payment of its attorney's fees and expenses incurred pursuant to 11 U.S.C. § 303(i).[1]

For the reasons set forth hereinbelow, Exchange Network is awarded $4,630.00 in attorney's fees pursuant to and in accordance with 11 U.S.C. § 303(i).

## BACKGROUND AND FINDINGS OF FACT

On April 13, 1987, the petitioning parties filed a Verified Petition in Involuntary Bankruptcy pursuant to 11 U.S.C. § 303(a). The petitioning parties Michael Onken, Edward Onken, and Roger Goldsmith, later joined by Nell Tagliente–Goldsmith ("Petitioners"), filed their Involuntary Petition against the proposed Chapter 7 debtor, Exchange Network, through and with the as-

sistance of their attorney, Ron Stock. The Petition alleged, as the grounds for filing the Involuntary Petition, that:

> The debtor is generally not paying his debts as they become due as indicated by the following: numerous trade accounts have gone into a negative position. Debtor has failed to collect the same. Debtor now refuses to honor creditors' right to spend trade credits that they have accumulated.

Exchange Network timely filed an Answer and Motion to Dismiss the Involuntary Petition. The proposed debtor raised each of the critical defenses which ultimately resulted in dismissal of the Involuntary Petition. These issues included: (1) the Petitioners held no "claims" and had no standing as creditors against the proposed debtor, (2) the Petitioners owed *to* Exchange Network certain debts and/or trade "credits" and there were, in effect, offsetting claims, and (3) all claims of the Petitioners were contingent and were subject to bona fide disputes.

Exchange Network is a "barter exchange" organization wherein members utilize the services and facilities of Exchange Network to buy, sell, or trade property or services. Members earn, or acquire, credits or debits when they trade, buy or sell goods and/or services, which credits or debits can be used in related or future transactions. Exchange Network earns income from membership fees and/or "trade fees" arising from transactions arranged and effected by, or through Exchange Network.

Gary Bottinelli is the sole shareholder and president of Exchange Network, a corporation, and served as its attorney throughout the proceedings in this matter. Members of Exchange Network include, among others, the Petitioners or relatives of Petitioners, Edward and Ann Onken, Mike and Sandy Onken, Roger Goldsmith, and Nell Tagliente–Goldsmith.[2]

---

1. Network Exchange also seeks attorney's fees pursuant to Colorado Revised Statute 13–17–102. This Court is not using or invoking that state statutory attorney's fees provision inas-

much as it is, under these circumstances, unnecessary.

2. In a confusing and perhaps undecipherable set of conflicting representations and documents,

The attorney for the petitioning parties, Ron Stock, was a member of a company, The International Trade Exchange, known as ITEX, which is a competing trade exchange organization. Debtor maintained that the Involuntary Petition was, in part, a product of business competition between ITEX and Exchange Network.

The Petitioners and Exchange Network had various and sundry disputes prior to the Petitioners filing the involuntary bankruptcy action. The record reflects sharp disputes and contentious relations between the Petitioners and Bottinelli, particularly with members Roger Goldsmith and the Gold & Silver Exchange. The environment of animosity and anger which pervaded the pre-petition relationship continued, unabated, through the proceedings in the involuntary case. Not insubstantial numbers of pleadings were filed and Petitioners undertook extensive discovery during the pendency of the case. The record reflects tenacious, unyielding, aggressive pursuit of all tactics available to the Petitioners in this judicial proceeding.[3]

After a hearing in Open Court on the merits, the Honorable William A. Hill, a United States Bankruptcy Judge sitting by designation, dismissed the Involuntary Petition and made the following findings of fact and conclusions of law:

IT IS FOUND:

> that the claims of petitioners are contingent as to liability, and

> that all the petitioner's owe proposed debtor company trade brokerage fees, and

> that there was *no evidence* to establish that proposed debtor company was not paying its debts as they become due, and

that barter exchange do not have the right to cash, but only to trade, and that there are several bona fide disputes, which are not proper disputes for this Court to decide, and

> that so long as proposed debtor does not intend to call Gary Bottinelli, Esquire as a witness in this action he may represent said company as its attorney .... (Emphasis added.)

Subsequent to Judge Hill's dismissal of the Involuntary Petition, Petitioners sought on two different occasions an enlargement of time within which they could file a motion for a new trial or amendment of the judgment.[4] Of significance, Petitioners sought enlargement of time from the Court based on a bankruptcy case ostensibly filed by a "World Trade" in Atlanta, Georgia which case would, it was alleged, support Petitioners' legal contentions in this case. That case and law proved illusory; it was never located or produced. Petitioners never did file a motion for new trial or amendment of judgment.

The Order Dismissing Involuntary Petition, dated September 8, 1987, *nunc pro tunc* August 10, 1987, also provided that "... no attorney fees are to be awarded to proposed debtor company." Thereafter, on October 29, 1987, Judge Hill ordered reconsideration and oral argument on the issue of whether or not Exchange Network was entitled to attorney's fees under Section 303(i). Due to a continuance of the hearing granted to accommodate Petitioners, and appointment of the undersigned new judge, this Court heard the matter of whether or not attorney fees should be awarded on January 20, 1988.

---

Roger Goldsmith and his wife, Nell Tagliente–Goldsmith, either individually, or through their company "Gold & Silver Exchange" and/or "Goldsmith at El Rancho" are members of Exchange Network. These Petitioners' Petition, pleadings, and membership application appear inconsistent.

3. A flurry of motions ensued in the litigation, some procedural and some related to discovery; some appear unnecessary, perhaps frivolous and harassing.

4. The Court file reveals at least two motions for enlargement of time within which to allow the Petitioners to file their motion for new trial or amendment of judgment. However, the lack of a Court file stamp calls the second motion into question; it was not, evidently, filed with the Bankruptcy Court. Nonetheless, the second motion for enlargement of time *was served on* Exchange Network and was responded to by the Debtor, as was the initial motion for enlargement of time filed by Petitioners.

## OPINION AND ORDER

The Bankruptcy Code provisions which govern an award of costs, attorney's fees, and damages for involuntary petitions dismissed by the Court, under 11 U.S.C. § 303, are as follows:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

The statutory language is clear that costs and attorney's fees *may* be awarded to a proposed debtor, by the Court, if the petition is dismissed and circumstances warrant. It is discretionary with the Court. It is equally clear that actual and punitive damages, if any, may be awarded to a proposed debtor, but *only* upon a finding of bad faith. An award of actual damages thus is not discretionary with the Court. An award of costs, attorney's fees or damages, in any event, is not automatic. *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 701 (Bankr.Colo.1984); *See, In re Walden*, 781 F.2d 1121 (5th Cir.1986); *In re Nordbrock*, 772 F.2d 397 (8th Cir.1985).

### Attorney's Fees and Costs Assessed.

■ With respect to 11 U.S.C. § 303(i), the leading case in this district is *In re Advance Press & Litho, supra.* In *Advance Press*, Judge Gueck carefully analyzes and applies these two distinct statutory provisions and concludes, in part, that:

It is not necessary that the Involuntary Petition be frivolous or meritless to award costs and fees ... there is no need to make a finding of bad faith on the part of one or more petitioners under [Section 303(i)(1)].

*In re Advance Press, supra* at 703.

The reasoning of Judge Gueck is sound and persuasive in awarding costs and attorney's fees:

The filing of an Involuntary Petition should not be lightly undertaken. Even the goodfaith filing of such a petition creates onerous circumstances for a debtor. Costs and fees are incurred at a time when a debtor can ill afford to assume more financial burdens. The court in *In re SBA Factors of Miami, Inc.*, 13 B.R. 99 (Bankr.S.D.Fla.1981) noted: 'It usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court.' *In re SBA Factors, supra*, at page 101. When petitioning creditors file such a petition, they knowingly assume the burden of proof to establish that a debtor is not paying its debts as they become due, or that a custodian was appointed or took possession of the debtor's property within 120 days before the petition was filed. It is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created.

*In re Advance Press, supra* at 702.

Beyond the rationale expressed by *In re Advance Press*, general principles of law and case precedent controlling involuntary petitions, made it rather clear that this Involuntary Petition was not substantially justified. Debts subject to bona fide dispute are excluded from Section 303(h)(1) calculation. This means that a disputed debt "should not be considered a debt which has not been paid as it became due." [5] *In re All Media Properties, Inc.*, 5

---

**5.** [T]he Court believes that where a debtor fails to pay a debt which is subject to a bona fide dispute that debt should not be considered a debt which has not been paid as it became due.

B.R. 126 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981); *In re Nordbrock, supra* at 399. Failure to pay a single debt does not establish that a debtor is generally not paying his debts as they become due. *In re Central Hobron Assoc.*, 41 B.R. 444, 448 (D. Hawaii 1984). A claim which is contingent as to liability is not considered a claim on which an entity may proceed to file an involuntary petition. 11 U.S.C. § 303(b)(1). Use of the Bankruptcy Court as a forum for trial and collection of debts which can be conducted in another forum, is improper and unacceptable. *In re Nordbrock, supra* at 399; *In re Walden, supra* at 1123.

This Court is convinced that, under the particular facts and circumstances of this case as reflected in the record, it is manifestly inequitable to not award reasonable costs and attorney's fees to the proposed debtor. The substantial burden and cost placed on the proposed debtor during this involuntary case was exclusively created by the Petitioners, and that is where the costs and fees should be borne.

### Damages as a Result of a Bad Faith Filing.

■ The filing of the Involuntary Petition in this case and the maintenance of the Petition until its dismissal comes perilously close to bad faith conduct by the Petitioners. Indeed, it may constitute bad faith under a line of cases which look to whether the Petitioners' Involuntary Petition served as a substitute for customary collection procedures or as an alternative forum for civil litigation. *In re SBA Factors of Miami, Inc.*, 13 B.R. 99 (Bankr.S.D.Fla.1981). *See also, In re Allen Rogers & Co.*, 34 B.R. 631 (Bankr.S.D.N.Y.1983).

As cited above, a relatively straightforward application of the controlling case law and key legal principles surrounding the filing of this Involuntary Petition should have advised the Petitioners, and their counsel, that their Involuntary Petition was

improper and substantially unjustified. The Petitioners, and significantly their attorney Mr. Stock, had ample knowledge of the nature and dispute of their claims. This was crystallized, in part, in the proposed debtor's correspondence dated October 20, 1986 to Mr. Stock, seven months before the petition was filed.

Even if, *arguendo*, it can be said that the initial Petition filing was believed to be factually sound and legally sufficient, it lost those characteristics after Petitioners' discovery was answered by Exchange Network and certainly after the initial trial by Judge Hill. Nonetheless, Petitioners persisted with at least three post-trial motions and then failed to proceed accordingly.[6] The continued maintenance of the action, coupled with the aggressive and unyielding management of the case, leads to this Court's conclusion that even if the case was not filed in bad faith, it also was not necessarily filed in good faith.

This Court, however, is unable to specifically find by a clear and convincing standard, that the Petitioners, themselves, acted with malicious intent, ill-will or purposely sought Bankruptcy Court as an alternative, but improper, forum to effect debt collection litigation. Moreover, the proposed debtor has not properly plead nor has it demonstrated the existence or amount of any such damages. Actual damages have not been proved by the proposed debtor. As a result, actual or punitive damages cannot and shall not be assessed pursuant to 11 U.S.C. § 303(i)(2).

■ Imposition of costs and attorney's fees against the Petitioners requires an effort by the Court to ascribe responsibility for filing the Involuntary Petition. *In re Walden, supra* at 1122–1123. This is not unlike the task required when fees are assessed as sanctions under B.R. 9011 or 28 U.S.C. § 1927. *Smith v. U.S.*, 834 F.2d 166 (10th Cir.1987); *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869 (10th Cir.1987).

Both Petitioners and their counsel have an obligation to proceed in a responsible

---

There is no apparent reason why a debtor should have to pay disputed debt to avoid the entry of an order of relief. *In re All Media Properties, Inc.*, 5 B.R. 126, 144 (Bankr.S.D.Tex. 1980), *aff'd*, 646 F.2d 193 (5th Cir.1981).

6. Two Motions for Enlargement of Time to File Post–Trial Motions and one Motion to Continue Hearing.

manner. If the Petitioners, however, rely on counsel merely to collect a debt, then the onus is on "the attorney to investigate the debtor's financial position *prior* to filing an involuntary petition in bankruptcy." (Emphasis supplied.) *In re Walden, supra* at 1123.

Here, counsel proceeded to file the Involuntary Petition and, *afterwards*, investigated through discovery efforts the financial condition of the proposed involuntary debtor. This particular conduct, coupled with the pre-petition notice and knowledge of counsel as to the nature and dispute of Petitioners' claims, added to the conscious tactic of using Bankruptcy Court as a debt collection device, constitutes culpable conduct justifying imposition of fees against counsel as well as the Petitioners.

■ The attorney's fees sought by the proposed debtor total $6,812.50.[7] The tasks identified and performed by Mr. Bottinelli as the proposed debtor's attorney, and not as an officer, director or employee, appear to be necessary and reasonable. The fees must be reduced, however, because the hours and hourly rate charged may be excessive. Mr. Bottinelli routinely charges $100.00 to $150.00 per hour in his general practice. The higher rate is for criminal defense work. "Most other clients" are charged $100.00 per hour. He files two to three bankruptcy a year. While Mr. Bottinelli is obviously experienced and able counsel, he is not highly skilled or experienced in bankruptcy matters.

As a consequence, legal services will be billed at the lower rate, $100.00 per hour, rather than the requested $125.00 per hour rate. Further, the hours billed will be reduced to eliminate an estimated 8.5 hours of research time incurred by Mr. Bottinelli and to insure an adequate and fair adjustment downward for Mr. Bottinelli's lack of experience in and familiarity with involun-

tary bankruptcy cases and Bankruptcy Court.

Thus, total fees assessed against Petitioners and Petitioners' counsel pursuant to 11 U.S.C. § 303(i),[8] are therefore $4,630.00.

IT IS THEREFORE ORDERED that attorney's fees and costs shall be paid one-half by all the Petitioners, said debt of $2,315.00 to be a joint and several obligation of each of the Petitioners, and one-half, or $2,315.00, shall be paid by their attorney, Mr. Stock. Payment shall be remitted not later than 45 days after this Order becomes final and non-appealable.

---

7. Fees are by way of verified application and include $150.00 for counsel (Russell Rowe) hired by the proposed debtor to conduct a portion of trial (examination of Mr. Bottinelli) if Mr. Bottinelli was required to testify.

8. This Court is relying exclusively on this statutory grant of discretionary authority. The

Court is thus not awarding fees, or making specific findings necessary to assess attorney's fees pursuant to Bankruptcy Rule 9011 and 28 U.S.C. § 1927 or the Tenth Circuit cases cited above, however, the Court believes such an award would be appropriate and justified.