**In re CITY OF WELLSTON, Debtor.**

**Bankruptcy No. 84–01492(3).**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Oct. 12, 1984.

See also, Bkrtcy., 42 B.R. 282.

Robert M. Susman, St. Louis, Mo., and Barry S. Schermer, Clayton, Mo., for creditors.

Richard H. Edwards, and Mark D. Hirschfeld, Clayton, Mo., for debtor.

## ORDER

JAMES J. BARTA, Bankruptcy Judge.

The continued hearing on the motion to dismiss filed by certain pre-bankruptcy judgment creditors was called on October 10, 1984. The parties appeared by counsel and presented testimony and evidence on the record. At the conclusion of the hearing, the Court announced its findings and conclusions from the bench.

The testimony at the hearing was presented by Robert L. Powell, the elected Mayor of the City of Wellston. He stated that on an unrecalled date in May, 1984, he had exercised the powers of the Office of Mayor and declared that a state of civil emergency existed in the City. See Creditors' Exhibit "A".[1] The reasons for the proclamation are set out in the document itself and were elaborated upon during Mr. Powell's testimony. In summary, the City's ability to continue to provide essential services was being threatened as a result of disagreements between the Mayor and the City Council. The Mayor testified that the only actions he performed under

the proclamation of civil emergency were the signing of several checks to pay City expenses and the filing of the Chapter 9 petition which commenced this bankruptcy case. He stated further that he believed that the conditions which led to the proclamation of civil emergency continued to exist on September 5, 1984 when he filed the Chapter 9 petition. In his opinion, the situation had worsened as the result of a seizure of the City's bank account under a writ of garnishment in aid of execution which had been obtained by the judgment creditors who are the movants in this proceeding. He described the sequence of events at the time of filing the Bankruptcy petition as follows: On Thursday, August 30, 1984, he was notified that a writ of garnishment had been placed against the City's only bank account; on Friday, August 31, 1984 the City was unable to meet its payroll; during the next several days, the Mayor telephonically contacted some members of the City Council to discuss the garnishment and the possibility of a bankruptcy proceeding; at 1:20 p.m. on Wednesday, September 5, 1984, Robert Powell filed the Chapter 9 Bankruptcy petition, signing the form as Mayor of the City of Wellston; at about 7:30 p.m. on September 5, 1984, the Wellston City Council conducted its regular semi-monthly meeting which resulted in a resolution which ratified the Mayor's action in filing the Chapter 9 petition.

During cross-examination, Mr. Powell stated that on an unrecalled date prior to September 5, 1984, he had been informed that the City Council had voted to rescind his proclamation of civil emergency, and that he had thereafter attempted to veto the rescission. Furthermore, he acknowledged that within a few days prior to the bankruptcy hearing, the City Council had voted his impeachment and removal from office. The Council's impeachment action

---

1. Article II, Section 9–20 of the Code of the City of Wellston (1949) states as follows: Notwithstanding any other provision of law to the contrary, an emergency may be declared to exist within the city whenever conditions arise by reason of war, conflagration, flood, heavy snow storm, blizzard, catastrophe, disaster, riot or civil commotion, acts of God, and including conditions, without limitation because of enumeration, which impair transportation, food or fuel supplies, medical care, fire, health or police protection or other vital facilities of the city.

is being reviewed by the Circuit Court of St. Louis County at Mr. Powell's request.

The attorneys for the judgment creditors have argued that the Mayor exceeded his authority in May, 1984 when he declared a civil emergency for reasons other than those set out at Section 9–20 of the Wellston Code; that he had no individual authority under State law to file a bankruptcy petition; that the debtor had failed to identify any State law which authorized a Third Class City in the State of Missouri to be a debtor in a Chapter 9 case; and that even if such authority were found to exist, a Chapter 9 case can be commenced only after the Council had passed an ordinance providing for such action.

### STATE AUTHORIZATION TO FILE CHAPTER 9

■ Section 109 of Title 11 of the United States Bankruptcy Code provides that a municipality may be a debtor under Chapter 9 if, among other requirements, it is generally authorized by State law to be a Chapter 9 debtor. This Court's research has indicated that the Missouri Statutes contain no specific language which authorizes a Third Class City to file a Chapter 9 Bankruptcy petition. The history of municipal bankruptcy legislation suggests however, that the absence of specific language may not be fatal to a municipality's standing to be a debtor. See generally, *Collier on Bankruptcy*, 15th Edition, Volume 2, Paragraph 109.03, page 109–16; and *Collier on Bankruptcy*, 15th Edition, Volume 4, Paragraph 900.03, page 900–14. Therefore, in the proper circumstances, a municipality may be authorized to proceed as a debtor under Chapter 9, notwithstanding the absence of a State statute specifically authorizing such action, if it can be shown that the circumstances require actions which are otherwise permissable under a grant of general authority in the State law.

The general powers and duties of the mayor and the council of a Third Class City are recited in Mo.Rev.Stat. § 77.260 (1978).

The mayor and council of each city governed by this chapter shall have the care, management and control of the city and its finances, and shall have power to enact and ordain any and all ordinances not repugnant to the constitution and laws of this state, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be deemed necessary to carry such powers into effect, and to alter, modify or repeal the same.

The Court therefore finds that the following circumstances existed prior to and on September 5, 1984 when the Chapter 9 petition was filed:

The City of Wellston had been unable to honor checks issued to pay salaries to its employees, including police, fire and sanitation workers;

Access to the City's only bank account had been blocked by the issuance of a writ of garnishment in aid of execution;

The City's ability to pass corrective legislation, or to meaningfully discuss solutions to its financial problems was drastically impaired as a result of disagreements between the City Council and the Mayor, and among the City Council members themselves; and

That the Mayor had been notified that utility services to City buildings would be discontinued if bills were not paid.

Additionally, the Court has considered the fact that since the filing of the Chapter 9 petition, the City has laid off several employees, has provided enough monies to meet each post-bankruptcy payroll, and has entered into agreements with the electric and gas utilities which have provided for uninterrupted services.

■ Therefore, the Court concludes that under these circumstances, the City possessed the authority to file this Chapter 9 petition for the preservation of peace and good order, for the health of the inhabitants and for the good government of the City, pursuant to Mo.Rev.Stat. § 77.260 (1978).

## MAYOR'S ACTION IN FILING THE CHAPTER 9 PETITION

Robert Powell has testified that he filed this Chapter 9 petition under the authority granted him by his proclamation of civil emergency. For the various reasons set out in this memorandum, the Court finds and concludes that it is not necessary that the Bankruptcy Court resolve the question of the validity or propriety of the Mayor's proclamation of civil emergency. The issues concerning the Bankruptcy Court's jurisdiction in this proceeding can be resolved by reference to Federal law and the appropriate State statutes, without reaching an issue which may be more properly presented to the State Courts.

■ Assuming however, that the proclamation of civil emergency was lawfully and validly declared by the Mayor in May, 1984, and remained valid in September, 1984, the circumstances which have been described in this case and which existed on and immediately prior to the filing of this Chapter 9 petition, do not constitute an emergency situation such that the Mayor possessed the authority to file a petition under Chapter 9 without the approval, authorization or concurrence of the City Council. Therefore, the Mayor's unilateral action in filing the Chapter 9 petition was without authority under State law as required by 11 U.S.C. § 109(c)(2).

Traditionally, recourse to the Bankruptcy laws has been considered to be the last resort for a beleagured debtor. However, the thrust of the chapter proceedings which anticipate at least partial repayment of a debt has caused many debtors to consider a petition for bankruptcy relief before all other remedies have been exhausted. Although such action is consistent with the legislative intent which led to passage of the Bankruptcy Code of 1978, a Bankruptcy case should not be commenced hastily or without due consideration of the eligibility requirements, and attention to procedural prerequisites.

## CITY COUNCIL'S ACTION WITH REGARD TO CHAPTER 9

The record indicates that on September 5, 1984, the Wellston City Council voted at a closed meeting to ratify the Mayor's action of filing the Chapter 9 petition. Thereafter, on September 24, 1984, the Council passed an ordinance authorizing the filing of an amended petition in the Bankruptcy case, recognizing the Mayor's action of September 5, 1984, and the previous Council resolution which ratified the Bankruptcy filing.

■ Although the Mayor lacked the authority to unilaterally file the Chapter 9 petition in this case, the action of the City Council on the evening of the day of the filing of the Chapter 9 Bankruptcy petition, in voting to ratify the Mayor's action, produced the agreement which allowed the City to file and proceed with the Chapter 9 Municipal Debt Adjustment case. See Mo. Rev.Stat. § 77.260 (1978).

The circumstances which existed at the time of the Council's ratification vote, and the fact that a specific ordinance was passed without undue delay authorizing this Chapter 9 proceeding, validate the City's operation as a debtor from the date of filing the Chapter 9 petition, including that period during which the ordinance was being finalized. Therefore

IT IS ORDERED that this hearing be concluded; and that the motion of Margie Hollins, Mamie Wallace, Annette McNeil, and Lloyd Brown to dismiss the Bankruptcy case for lack of jurisdiction is DENIED.