**In re LACLEDE CAB COMPANY,
Alleged Debtor.**

**Bankruptcy No. 87–01586–BKC–JJB.**

United States Bankruptcy Court,
E.D. Missouri, E.D.

Aug. 11, 1987.

Gerald A. Rimmel, III, Thomas M. Blumenthal, Clayton, Mo., Irvin A. Friedman, St. Louis, Mo., for alleged debtor.

Clyde E. Craig, St. Louis, Mo., for petitioning creditors.

## MEMORANDUM

JAMES J. BARTA, Chief Judge.

The trial of this contested involuntary petition was conducted on August 3, 1987. Testimony and other evidence was presented by the Petitioning Creditors and by the Alleged Debtor, and the matter was submitted to the Court. This Memorandum and companion Order are being entered after consideration of the record as a whole.

The Involuntary Petition was filed at 10:05 a.m. on June 1, 1987 by four entities described as employee benefit funds. The names of the funds and the amounts claimed to be owed are:

| | |
|---|---|
| St. Louis Labor Health Institute (L.H.I.) | $159,766.00 |
| L.H.I. Supplemental | 15,096.00 |
| Teamsters Local 688 Insurance & Welfare Fund (Insurance Fund) | 12,630.00 |
| Teamsters Medicare Trust For Retired Employees | 13,605.00 |

The Alleged Debtor, Laclede Cab Company, was referred to during this hearing as a corporation engaged in the business of operating a fleet of taxicabs in the St. Louis Metropolitan area.

The Petitioning Creditors have argued that the Alleged Debtor is generally not paying its debts as they become due, and that, therefore, an Order for Relief under Chapter 7 should be entered. The Alleged Debtor's answer filed on June 19, 1987 admitted that its principal place of business has been within the Eastern District of Missouri for the 180 days preceding the filing of the Petition, but denied every other allegation. The Answer requested dismissal of the Petition, actual and punitive damages and attorney's fees and costs, pursuant to 11 U.S.C. § 303(i); and pursuant to Bankruptcy Rule 9011, the imposition of sanctions against the Petitioning Creditors and their attorneys.

PETITIONING CREDITORS

In its answer and during this trial, Laclede Cab has attacked the standing of the Petitioning Creditors to prosecute this Involuntary Petition. After a careful review of the Court file and the documents and records presented by both parties, the Court concludes that one of the Petitioning Creditors has not been proven to be a separate entity which is capable of being counted as a creditor for purposes of 11 U.S.C. § 303(b)(1). The L.H.I. Supplemental is a supplement to the St. Louis Labor Health Institute, in that the former provides benefits to the members which are different from those provided by the L.H.I. Agreement. The record does not establish that the L.H.I. Supplemental enjoys an existence separate and apart from the L.H.I. although the testimony refers to a trust agreement administered by the same Trustees who serve in L.H.I. Therefore, solely for the purpose of deciding the issues in these involuntary proceedings, the L.H.I. Supplemental will be considered as one entity with the L.H.I.

■ The record at this hearing established that the L.H.I. is an independent corporation created by a decree of the Circuit Court of the City of St. Louis. *Alleged Debtor's Exhibit "B"*. The corporation's operations appear to be based upon certain Articles of Agreement as amended, and a series of Official By-Laws. *Alleged Debtor's Exhibits "C" and "D"*. The highest governing body of L.H.I. is a Board of Trustees which is elected by the members of L.H.I. The Board of Trustees is empowered to elect three officers of L.H.I., a President, a Vice-President and a Secretary Treasurer, whose duties include the general supervision of the activities of L.H.I. The current President, Ron Gamache, has held that position for a number of years. Mr. Gamache testified at this trial that he as President had authorized the L.H.I. attorneys to file the Involuntary Petition in this case, without the prior approval of the other officers of the Board of Trustees. No reason was given for not seeking this prior approval, and the record does not suggest any exigent circumstance or other

compelling reason for commencement of this proceeding prior to consultation with the Board of Trustees. In response to the Alleged Debtor's cross-examination, Mr. Gamache testified that at a meeting on some date *after* June 1, 1987, the Board had voted to approve the filing of this Petition. Section 2 of Article II of the L.H.I. By-Laws states that all acts of the President shall be subject to the approval of the Board of Trustees. In the circumstances presented in this matter, the Court finds and concludes that the Board's subsequent ratification of its President's act of authorizing the filing of this Involuntary Petition cured any procedural deficiency which might otherwise have operated to support dismissal of the Petition without reaching the substantive issues presented by the pleadings. See *In Re The City of Wellston*, 43 B.R. 348 (Bankr.E.D.Mo. 1984).

The second Petitioning Creditor, Teamster's Local 688 Insurance and Welfare Fund has been described as a "common-law trust" operating under an Agreement and Declaration of Trust as amended from time to time. *Alleged Debtor's Exhibit "E"*. The Trust is managed, maintained and controlled by a three-member Board of Trustees. Mr. Gamache testified that he has been the "Union Trustee" member of the Board for about fourteen years; that the person who had been the "Public Trustee" member had died and had not been replaced; and that he recalled having consulted with the "Employer Trustee" member about the filing of the Involuntary Petition on an unrecalled date, but that no vote was taken, and to his knowledge, no record was made with respect to the results of the consultation. As of the date of this Memorandum, no supplemental documentation has been filed to reflect the Board's action with respect to this case. Mr. Gamache has testified that he made the decision which authorized the inclusion of the Insurance Fund as one of the Petitioning Creditors. In the circumstances presented in this matter, the Court finds and concludes that the record does not establish that the Trustees of the Insurance Fund voted prior to June 1, 1987 to authorize the filing of

this Involuntary Petition on behalf of the Insurance Fund, as required by Section 4.07 of the Amended Agreement and Declaration of Trust. *Alleged Debtor's Exhibit "E".*

The third Petitioning Creditor, the Teamster's Medicare Trust for Retired Employees is a trust originally established on February 25, 1964 under an Agreement and Declaration of Trust. *Alleged Debtor's Exhibit "F".* The Trust is managed and controlled by a three-member Board of Trustees. Section 4.07 of the Amended Agreement and Declaration of Trust states that "except as herein otherwise provided, all action by the Trustees shall be by majority vote." The Trustees' votes may be cast in person at a meeting, or as evidenced by a writing. *Alleged Debtor's Exhibit "G".* Mr. Gamache has testified that he was told by the Union Trustee to "go ahead and do it" after they had discussed the filing of this Involuntary Petition. The record does not establish that the Board called a meeting or otherwise voted to authorize this action. The Court must find and conclude that from this record the Board of Trustees of the Medicare Fund did not vote prior to June 1, 1987 to authorize the filing of this Involuntary Petition as required by Section 4.07 of the Amended Agreement and Declaration of Trust.

The absence of authorization to act on behalf of a corporation or other entity may by itself be a sufficient basis upon which the act may be determined to be void *ab initio.* Each situation, however, must be decided upon a consideration of all the facts and circumstances. In the matter being considered here, the witness has offered testimony which indicates that the Insurance Fund and the Medicare Fund have ratified the act of filing the Involuntary Petition, notwithstanding a failure to strictly adhere to procedural requirements. Such ratification and the actions of Mr. Gamache in filing the Petition are entirely consistent with Mr. Gamache's apparent authority to run the Funds' day-to-day operations. Furthermore, there is no indication that the Funds have objected to the filing of the Petition. Finally, there is a fundamental principle in Bankruptcy law which urges a court to attempt to decide a matter upon the substantive issues rather than delay the proceedings upon purely procedural grounds. The Alleged Debtor's request to dismiss for lack of authority to file the Involuntary Petition will be denied.

A consideration of the substantive issues must include a limited examination of the relationships between the Petitioning Creditors, the Alleged Debtor, and Teamster's Local 688. Mr. Gamache testified that in addition to the positions he held in L.H.I. and the Insurance Fund, he is also the Secretary-Treasurer of Local 688, the bargaining agent for the drivers and dispatchers employed by the Alleged Debtor. In April, 1986, the ownership of the Alleged Debtor changed, but the Union and the Company continued to operate under the existing labor agreement. *Alleged Debtor's Exhibit "G".* By its terms, the written agreement requires that the employer (the Alleged Debtor) remit monies to the Insurance Fund, the Medicare Fund and the Union on or before the 15th day of the month following the month for which the monies have been collected or withheld. Late payments are not considered delinquent, however, until thirty (30) days thereafter.

Notwithstanding these requirements, however, the record in this case clearly establishes that the Alleged Debtor and the Petitioning Creditors engaged in a course of conduct which permitted the payment of drivers' monies other than dues on dates which were well beyond the 45-day period set forth in the written agreement.

In response to cross-examination by the Alleged Debtor's counsel, Mr. Gamache agreed that the payment records reflected that drivers' payments from Laclede Cab to the Petitioning Creditors were made and accepted on dates which were 50 or more days after the last day of the month for which the monies were withheld or collected. *Petitioning Creditors' Exhibit "3b".* The Petitioners' records reflect that between March, 1984 and April, 1987, every monthly payment on the drivers' accounts was made and accepted outside of the for-

ty-five day delinquency period. The only change in this course of conduct occurred on May 15, 1987 when the attorney for the Petitioning Creditors sent a letter to the attorney for the Alleged Debtor demanding that all amounts due to the three Funds for the month of May, 1987 be "fully paid no later than June 1, 1987." *Petitioning Creditors' Exhibit "1"*. The reason given for this demand was that Laclede Cab had communicated to the Union its intention to convert to an independent contractor operation. The Involuntary Petition was filed at 10:05 a.m. on June 1, 1987. The record indicates that the Alleged Debtor attempted to make the payments demanded by the May 15th letter sometime later in the day on June 1st, but that the monies were not accepted at the Local's Office.

Also on June 1, 1987, a small group of union drivers set up a picket line at the offices of the Alleged Debtor. This random picketing continued until June 10th when the Union called a strike against Laclede Cab and sanctioned a formal picket line which remained through the date of this trial.

Other testimony on behalf of the Alleged Debtor referred to a meeting in mid-May, 1987, wherein a Union representative told several Laclede Cab dispatchers that if the Company refused to continue negotiating, the Union might force it into Bankruptcy.

Mr. Gamache testified that his reasons for authorizing the filing of this Involuntary Petition included his belief that the Alleged Debtor had not demonstrated an ability to pay its debts. His stated belief was based upon several events: the Company's announcement that, upon termination of the existing labor agreement, it had elected to treat the drivers as individual contractors rather than bargain collectively through Local 688; a less than one-day suspension of business operations as the result of an interruption in the insurance coverage on the company vehicles;[1]

and the comments of several unidentified Union members to the effect that "not many" drivers were signing up as individual contractors.

## GENERALLY NOT PAYING DEBTS

 The Petitioning Creditors have argued that the Alleged Debtor is generally not paying its debts as they become due.[2] It is well settled that the operative date with respect to the nonpayment of debt in an involuntary proceeding is the date of filing of the involuntary petition. *In Re Vincent J. Fasano, Inc.*, 55 B.R. 409, 417 (Bankr.N.D.N.Y.1985). Although generally, an involuntary order for relief will be entered if the petitioning creditors establish a pattern of nonpayment of several undisputed, noncontingent debts, the failure to pay one or more significantly large debts may be a sufficient basis for such relief. *In Re Garland Coal & Mining Company*, 67 B.R. 514 (Bankr.W.D.Ark. 1986). Courts have been reluctant to apply a purely mechanical test in determining whether an alleged debtor is generally not paying its debts. Most determinations are based instead upon four broad factors: the number of debts; the amount of the delinquency; the materiality of the nonpayment; and the nature of the alleged debtor's conduct of its financial affairs. *In Re Reed*, 11 B.R. 755 (Bankr.S.D.W.Va.1981).

 In the case being considered here, the Petitioning Creditors' evidence not only fails to establish a general nonpayment of debts, but also mandates that the Court impose appropriate sanctions for abuse of the Bankruptcy Code.

The Petitioning Creditors did not establish that the Alleged Debtor was not paying its debts to other creditors as they became due. In fact, the Alleged Debtor's evidence established that its other debts

---

1. Neither the Bankruptcy Court file nor the record at this trial has disclosed the specific reason for the insurance interruption.

2. If an involuntary petition is controverted, the Court shall enter an order for relief only if the debtor is generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute, or if within 120 days before the date of the filing of the petition, a custodian was appointed or took possession. 11 U.S.C. § 303(h).

were generally timely paid within 30 to 60 days after invoice.

The Petitioning Creditors did not establish that the Alleged Debtor was not paying its debts to the Petitioning Creditors when these debts became due. The established course of conduct between these parties clearly indicated that payments were made and accepted more than 45 days after the last day of the month for which the payments were to be made. On June 1, 1987, Laclede Cab had paid the March, 1987 payments. Under the accepted course of conduct, the April, 1987, payment would not have been delinquent until June 15, 1987, and the payment would have been timely made shortly thereafter. Not even the deadline set by the Petitioning Creditors' letter demand for payment ("no later than June 1, 1987") had passed when the Involuntary Petition was filed at 10:05 a.m.[3]

The evidence clearly established a course of conduct between these parties which allowed for payment within 50–65 days after the end of the report month. The Petitioning Creditors cannot now claim something more stringent is required and thus attempt to prove the Alleged Debtor was not generally paying its debts as they came due.

■ The Petitioning Creditors did not establish that Laclede Cab was substantially delinquent on any accounts payable which may have been due on June 1, 1987. The

3. The Alleged Debtor attempted to pay the April payments later that day, before the normal close of business.

4. The Alleged Debtor's Accountant testified that on June 1, 1987, less than two (2%) percent of its vendor accounts payable were 60 days delinquent.

5. Section 303(i) reads as follows:
 If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
 (1) against the petitioners and in favor of the debtor for—
 (A) costs; or
 (B) a reasonable attorney's fee; or
 (2) against any petitioner that filed the petition in bad faith, for—

fact that the Alleged Debtor's cash position on June 1st may not have been sufficient to satisfy the total amount due upon its payables, whenever they became due, is not by itself a basis upon which an involuntary order for relief is to be entered. Therefore, the record does not establish that the Alleged Debtor was delinquent in its payments to a material number of its creditors;[4] the amount of any delinquency was minimal; the delinquencies have not been shown to be material; and but for the unexplained lapse in the insurance coverage, the record has not suggested any grounds upon which the Alleged Debtor's conduct of its financial affairs is to be criticized. Therefore, the Petitioning Creditors' request for an Involuntary Order for Relief is being denied, and the Involuntary Petition will be dismissed.

## BAD FAITH FILING

If a Court dismisses an involuntary petition other than on the consent of the parties, the Court may grant judgment against the petitioning creditors for costs or, a reasonable attorneys fee, or, if the petition was filed in bad faith, for damages proximately caused by such filing, or punitive damages. 11 U.S.C. § 303(i).[5] In addition to a request for a judgment under Section 303(i), Laclede Cab has prayed for sanctions against the Petitioning Creditors and their attorneys under Bankruptcy Rule 9011.[6] The judgment for costs or attor-

(A) any damages proximately caused by such filing; or
(B) punitive damages.

6. Bankruptcy Rule 9011 reads as follows in pertinent part:
 (a) **Signature.** Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, statement of financial affairs, statement of executory contracts, Chapter 13 Statement, or amendments thereto, shall be signed by at least one attorney of record in his individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state his address and telephone number. The signature of an attorney or a party constitutes a certificate by him that he has read the document; that to the best of his

ney's fees under Section 303(i)(1)(B) does not require a finding of bad faith, and is intended to reimburse an alleged debtor for its expenses incurred in successfully defending an improper involuntary petition. Upon consideration of the record as a whole, the Court finds and concludes that the requested amount of $15,000.00 as compensation for the legal services rendered by two law firms in connection with this proceeding upon an involuntary petition is reasonable. Judgment will be entered accordingly.

The issue of a bad faith filing is not so easily addressed. Bad faith is not specifically defined in the Bankruptcy Code. Rather, the issue is to be determined by the Court upon a consideration of the facts in the particular circumstances presented in the record in each case. See *In Re Advanced Press and Litho, Inc.*, 46 B.R. 700 (Bankr.D.Colo.1984).

Courts have found bad faith when a petition was ill-advised or motivated by spite, malice or a desire to embarrass the alleged debtor. Similarly, other decisions have looked to whether the creditors' actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures. See *In Re Wavelength, Inc.*, 61 B.R. 614 (B.A.P. 9th Cir.1986).

The Court of Appeals for the Eighth Circuit has stated that the use of an involuntary petition to affect a non-bankruptcy purpose is evidence of bad faith. *Basin Electric Power Cooperative v. Midwest Processing Company*, 769 F.2d 483, 487 (8th Cir., 1985).

■ The Petitioning Creditors in this case have presented a record which falls dramatically short of establishing any basis for the entry of an order for relief under the Bankruptcy Code. This result was or

should have been easily discernible prior to the filing of the Involuntary Petition. From the evidence presented at trial, the Court concludes that the Petitioning Creditors' action in filing this Involuntary Petition was for a non-bankruptcy purpose, most likely in an attempt to force the Alleged Debtor to enter into labor negotiations. Neither organized labor nor any other legitimate entity should be denied access to the courts, or discouraged from attempting to redress a perceived injustice. However, when, as here, the purpose for filing an Involuntary Petition is a non-bankruptcy purpose; when, as here, the evidence fails to support the Petitioners' allegations; and when, as here, the filing was ill-advised and perhaps based on contrivance, the Court must find bad faith.

## DAMAGES

■ In addition to providing testimony concerning the timely payment of salaries, union dues and invoices to most vendors, the Alleged Debtor's accountant described the decrease in business which occurred after June 1, 1987 as follows: a total of 51 customers cancelled regularly scheduled calls during the month of June; total customer charges in June were down approximately $74,000.00 compared to previous months; and revenues from gasoline sales were down. Although there is little dispute that these losses and reductions occurred during and after the month of June, 1987, the key element of proximate causation required by Section 303(i)(2)(A) was not established in this record. The Involuntary Petition was the cause for some of the cancellations by regular customers; and the publicity as a result of these Bankruptcy proceedings resulted in a decrease in the number of telephone requests for service. However, other factors may also have con-

knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harrass, to cause delay, or to increase the cost of litigation. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to

the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

tributed to these losses, including the unsanctioned picketing by certain drivers, and the official strike called by Local 688 on June 10, 1987.[7] It would not be fair to these Petitioning Creditors to attempt to assess or apportion actual damages against them based upon business losses which may have been caused by several factors, evidence of which has not been fully developed in this record. Therefore, the request of Laclede Cab for a judgment for actual damages is being denied.

Punitive damages generally are awarded when there is a showing that a wrongful act was intentionally done without just cause or excuse. Punitive damages may also be assessed to punish a defendant for outrageous conduct and to deter similar conduct in the future. *Northern v. McGraw-Edison Company*, 542 F.2d 1336 (8th Cir.1976), cert. denied *McGraw-Edison Company v. Soper*, 429 U.S. 1097, 97 S.Ct. 1115, 51 L.Ed.2d 544, rehearing denied, 430 U.S. 960, 97 S.Ct. 1612, 51 L.Ed.2d 812; *Hollins v. Powell*, 773 F.2d 191 (8th Cir.1985), cert. denied, — U.S. —, 106 S.Ct. 1635, 90 L.Ed.2d 181 (1986).

The amount of punitive damages is not necessarily limited or even related to the amount of actual damages. *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135 (8th Cir.1986).

The evidence in this case indicates that in filing the Involuntary Petition, the Petitioning Creditors acted with an almost total disregard of the Alleged Debtor's actual financial condition on June 1, 1987, as it appeared from the record in this proceeding. Such conduct which has at least in part contributed to the unnecessary economic loss suffered by the Alleged Debtor is an improper use of the Bankruptcy Code for which punitive damages may be awarded. See *Roth v. Black & Decker, U.S., Inc.*, 737 F.2d 779 (8th Cir.1984). In the circumstances presented here, the amount of punitive damages which is meaningful, not oppressive, and consistent with the severity of the improper action is $15,000.00.

## RULE 9011

The unverified Petition in this case was signed only by the Attorney for the Petitioning Creditors. All petitions filed under Title 11 shall be verified or contain an unsworn declaration. *Bankruptcy Rule 1008*. The Official Forms prescribed by the Judicial Conference of the United States shall be observed and used with alterations as may be appropriate. *Bankruptcy Rule 9009*. Official Form No. 11, captioned, "Involuntary Case: Creditors' Petition" includes an unsworn declaration which is to be dated and signed by the petitioner. The Involuntary Petition in this case did not contain the Petitioners' unsworn declaration. In the circumstances presented here, the absence of verification is not a fatal defect which would preclude all subsequent proceedings. However, when a document has been interposed for an improper purpose, the Bankruptcy Court must consider imposition of sanctions as set out in Bankruptcy Rule 9011(a). The operative language of Bankruptcy Rule 9011 is similar to that of Rule 11 of the Federal Rules of Civil Procedure. The standard to be applied in a consideration of these Rules is an objective one, not limited to the subjective belief of the attorney at the time the document was signed. The Advisory Committee Notes to Rule 11 indicate that the Rules are intended to curb the abuse which results from the filing of frivolous pleadings and other papers. *Abrahams v. World Hockey Association*, 824 F.2d 617 (8th Circuit 1987); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986). Upon consideration of the record at this hearing with respect to the extent of the participation by the Petitioners' attorneys in the filing of this document, and mindful of the fees and damages awarded herein, the Alleged Debtor's request for sanctions pursuant to Bankruptcy Rule 9011 is being denied.

## ORDER

At Saint Louis, in this District, this 11th day of August, 1987.

---

7. Neither the drivers nor the local union is a party in this Involuntary Proceeding.

Upon consideration of the record as a whole, and consistent with the Memorandum entered in this matter,

IT IS ORDERED that this hearing be concluded; and that the Alleged Debtor's motion is granted; and that the request of the Petitioning Creditors for an order for relief is denied; and

That the Involuntary Petition is dismissed; and

That judgment is entered in favor of Laclede Cab Company, Alleged Debtor and against St. Louis Labor Health Institute, L.H.I. Supplemental, Teamsters Local 688 Insurance & Welfare Fund and Teamsters Medicare Trust for Retired Employees, Petitioning Creditors; and that said Petitioning Creditors are to pay to said Alleged Debtor, the sum of $15,000.00 as and for the Alleged Debtor's attorneys fees in this matter pursuant to 11 U.S.C. § 303(i)(1)(B); and that said Petitioning Creditors are to pay to the Alleged Debtor the additional sum of $15,000.00 as and for punitive damages as a result of the filing of this Involuntary Petition pursuant to 11 U.S.C. § 303(i)(2)(B); and that said judgment amounts are imposed jointly and severally against the Petitioning Creditors; and

That the parties' remaining requests are hereby denied.

See also, Bkrtcy., 76 B.R. 142.

Gregory D. Willard, St. Louis, Mo., for debtors.

Milton L. Fisher, James M. Lawniczak, Chicago, Ill., for INA.

Randall A. Martin, St. Louis, Mo., for The Stolar Partnership.

Stuart J. Radloff, Clayton, Mo., for Creditors' Committee.