In re Barry I. FEINBERG,
Alleged Debtor.

Bankruptcy No. 98–53157–293.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

Feb. 26, 1999.

Eugene Portman, Portman & Kates, L.C., Clayton, MO.

Jack B. Spooner, Wittner, Poger, Rosenblum, Spewak & Maylack, P.C., St. Louis, MO.

David A. Warfield, Husch & Eppenberger, LLC, St. Louis, MO.

Robert E. Eggmann, Copeland, Thompson & Farris, P.C., Clayton, MO.

### MEMORANDUM AND ORDER

JAMES J. BARTA, Chief Judge.

This matter comes before the Court upon the involuntary bankruptcy petition filed by Drs. Albert Cohen, Isabel Perez, Brett Wolff, Soon Kim and Chris Felling (collectively referred to as the "Petitioning Creditors") against Dr. Barry I. Feinberg ("Alleged Debtor"). In response to the involuntary petition, the Alleged Debtor filed a Motion to Dismiss or in the Alternative to Abstain or Suspend Involuntary Bankruptcy Proceeding (the "Dismissal Motion"). On February 8, 1999, this Court conducted a hearing on the issue of whether an order for relief should be entered against the Alleged Debtor and on the Dismissal Motion. The following determination and orders are based on the stipulations of the parties, the evidence adduced, the arguments of counsel, and the record as a whole.

On November 30, 1998 (the "Petition Date") the Petitioning Creditors commenced an Involuntary Petition for Relief Under Chapter 11 of the United States Bankruptcy Code against the Alleged Debtor.

The Alleged Debtor is a physician licensed by the State of Missouri with a specialty in anesthesiology.

The Petitioning Creditors are also licensed physicians specializing in anesthesia who practiced with the Alleged Debtor in one or more medical practice groups between approximately 1986 and 1993.

The Alleged Debtor is married to Dr. Rachel Feinberg (the Alleged Debtor and Dr. Rachel Feinberg are sometimes collectively referred to as the "Feinbergs"). At all times relevant herein, the Alleged Debtor and Dr. Rachel A. Feinberg were husband and wife. Dr. Rachel A. Feinberg is also a licensed anesthesiologist. She presently practices with the Alleged Debtor at Gateway Pain Center, Inc.

The Alleged Debtor was aware that the Petitioning Creditors, together with certain other physicians, had asserted claims and were contemplating litigation against him as early as October of 1994.

On October 30, 1995, the Petitioning Creditors filed a lawsuit against the Alleged Debtor, Dr. Rachel Feinberg, and several corporations owned by or affiliated with the Feinbergs, which case was filed in the St. Louis County Circuit Court and was given Cause No. 682131 (the "State Court Litigation"). Drs. Marcellus Lawrence and Barry Goldstein thereafter intervened in the State Court Litigation and aligned themselves as plaintiffs against the defendants (the Petitioning Creditors together with Drs. Lawrence and Goldstein are sometimes referred to as "Plaintiffs" or "Judgment Creditors").

On April 26, 1996, the Court in the State Court Litigation ordered the Plaintiffs and the Feinbergs to exchange copies of all State and Federal Income Tax Returns for the years 1984 through 1995.

On May 1, 1996, a Quit Claim Deed for the home located at Three Somerset Downs in Ladue (the "Residence") was signed by "Dr. Barry I. Feinberg and Dr. Rachel A. Feinberg, his wife", as grantors, to "Dr. Barry I. Feinberg and Dr. Rachel A. Feinberg, his wife, as joint tenants". The Residence has been the principal residence for the Feinbergs since 1986.

On August 27, 1997, the Petitioning Creditors served a Notice of Deposition of the Alleged Debtor.

On September 9, 1997, the Feinbergs formed a limited liability company called Feinberg Real Estate Investments Two, LLC. The Feinbergs own all of the member interests in Feinberg Real Estate Investments Two, LLC. On September 30, 1997, the Feinbergs deeded to Feinberg Real Estate Investments Two, LLC a condominium in Vail, Colorado at 610 W. Lionshead Circle ("Lionshead Condo") that had been titled in the names of Barry I. Feinberg and Rachel A. Feinberg since they acquired the Lionshead Condo on September 19, 1994. The Feinbergs paid $550,000 for the Lionshead Condo. To finance the purchase price, the Feinbergs borrowed the entire purchase price from Commerce Bank secured by liens on the Residence and on the Lionshead Condo. Thereafter, the Feinbergs invested approximately $250,000 for capital improvements to the Lionshead Condo.

On September 9, 1997, Barry and Rachel Feinberg formed a limited liability company called Feinberg Real Estate Investments One, LLC. Barry and Rachel Feinberg own all of the member interests in Feinberg Real Estate Investments One, LLC. On September 15, 1997, Feinberg Real Estate Investments One, LLC acquired a condominium in Vail, Colorado at 548 S. Frontage Road ("Frontage Condo"). On October 9, 1998, Feinberg Real Estate Investments One, LLC entered into a contract to sell the Frontage Condo. The sale of the Frontage Condo closed on Decem-

ber 16, 1998, after the involuntary petition had been filed.

On October 3, 1997, the Alleged Debtor transferred his interest as a tenant in common in approximately 149 acres of real estate in Callaway County (the "Kingdom City Farm") to Barry I. Feinberg and Rachel Feinberg, tenants by the entireties.

The Kingdom City Farm had been titled in the Alleged Debtor's name as a tenant in common with Robert Halley and/or the Halley Family Trust since they acquired the Kingdom City Farm in 1987.

On June 5, 1998, the Circuit Court in St. Louis County entered a final judgment in favor of the Plaintiffs in the State Court Litigation as follows:

| Plaintiff | Actuals | Punitives | Total |
|---|---|---|---|
| Albert Cohen | 345,000 | 100,000 | 445,000 |
| Chris Felling | 15,000 | 15,000 | 30,000 |
| Soon Kim | 345,000 | 100,000 | 445,000 |
| Marcellus Lawrence | 275,000 | 50,000 | 325,000 |
| Isabel Perez | 345,000 | 100,000 | 445,000 |
| Brett Wolff | 15,000 | 15,000 | 30,000 |
| Barry Goldstein | 355,000 | 75,000 | 430,000 |
| Medbill (joint several) | 150,000 | 0 | 150,000 |
| **Totals** | **1,845,000** | **455,000** | **2,300,000** |

Judgment was also entered in the State Court Litigation in favor of the Feinbergs against all of the Judgment Creditors as to Count IX of the Petition, which alleged that a transfer of shares of stock in Gateway Pain Center, Inc. ("Gateway") from "Barry I. Feinberg to Barry and Rachel Feinberg, as joint tenants with rights of survivorship" was a fraudulent conveyance.

On or about July 2, 1998, the Alleged Debtor filed his Motion for New Trial which was denied by the State Court on August 25, 1998.

On or about September 1, 1998, the Alleged Debtor filed his Notice of Appeal to the Missouri Court of Appeals for the Eastern District of Missouri. The Alleged Debtor did not file a motion for stay pending appeal.

On August 29, 1998, Feinberg Real Estate Investments Two, L.L.C. granted a mortgage and deed of trust on the Lionshead Condo to Green, Schaaf & Jacobson, P.C. (the "Green Law Firm") to secure legal fees due to the Green Law Firm at least partially on account of the State Court Litigation. This mortgage and deed of trust was recorded on September 3, 1998. As of the Petition Date, the Feinbergs owed the Green Law Firm approximately $70,000.

Before filing the involuntary petition, the Petitioning Creditors conducted post-judgment discovery and garnished certain accounts and other entities. On December 11, 1998, Dr. Goldstein, one of the Judgment Creditors who is not a Petitioning Creditor, also garnished Gateway Pain Center, Inc.

In the Answers to Interrogatories in Aid of Execution ("Interrogatory Answers") filed by the Alleged Debtor in the State Court Litigation, he lists his only "regular source of income from any source (whether received as employment, wages, earnings, commissions, bonus, salary, dividends, interest, distributions, accounts receivable,

payments under contract or otherwise)" as $4,753.59 after taxes every two weeks from Gateway.

In the Interrogatory Answers, the Alleged Debtor denied having any cash in excess of $500 in his possession, custody, or control.

In the Interrogatory Answers, the Alleged Debtor disclosed that Gateway executed a promissory note in the amount of $140,000 payable to the Feinbergs, as "joint tenants by the entireties with the right of survivorship." No payments on this note are being made by Gateway.

In the Interrogatory Answers, the Alleged Debtor denies owning any "personal property or chattels of a value in excess of $500.00".

In the Interrogatory Answers, the Alleged Debtor admitted to holding at one time or another within the five previous years some interest in the following entities:

Albar Financial Services, Inc.

Albar Medical, P.C.

Anesthesia Medical Management, Inc.

Feinberg Pain Management, Inc.

Feinberg Real Estate Investments One, L.L.C.

Feinberg Real Estate Investments Two, L.L.C.

Gateway Pain Center, Inc., including doing business as Injury Specialists and/or Physicians' Pain Management Center

Medbill, Inc.

Medical Devices, L.C.

MLF Packaging, Inc.

Pennridge Development, Inc.

Pennridge Medical Center, Inc. .

Creativeworks, L.L.C.

During each of the tax years 1993 through 1997, the Feinbergs filed joint federal and state income tax returns. The adjusted gross income on the federal income tax return for each of those years is as follows:

| | |
|---|---|
| 1993 | $1,343,887 |
| 1994 | $2,092,041 |
| 1995 | $1,161,436 |
| 1996 | $ 657,081 |
| 1997 | $ 685,544 |

On January 30, 1998, Gateway sold its physical therapy assets and practice to Health South for $901,940 and the proceeds of the sale were distributed to the Feinbergs. At the time of the sale to Health South, the Plaintiffs in the State Court Litigation were challenging the transfer of all of the Alleged Debtor's interest in Gateway to the Feinbergs pursuant to Count IX of the Petition.

Before filing the involuntary bankruptcy petition, the Petitioning Creditors, through their counsel, investigated the financial position of the Alleged Debtor by searching the public records which revealed, among other things, the transfers described herein. The Petitioning Creditors also investigated the financial position of the Alleged Debtor through the post-judgment discovery referred to above.

Aside from the claims of the Judgment Creditors, all claims against the Alleged Debtor are being paid on a current basis. These debts include routine monthly expenses such as credit cards, utility bills, home care, and maintenance bills, legal bills, and medical bills. Some of these obligations are billed to the Alleged Debtor only, some are billed to Dr. Rachel Feinberg, and others are billed to both of them.

The Residence has a value of at least $1 million. There are three liens on the Residence as follows: (a) Commerce Bank for approximately $590,000; (b) Commerce Bank for approximately $200,000, and (c) the Green Law Firm for approximately $70,000. Feinberg Real Estate Investments Two, L.L.C. presently makes the mortgage payments on the loan identified in (a) above. Barry and Rachel Feinberg presently make the mortgage payments on the loan identified in (b) above. Gateway Pain Center, Inc. has historically made the payments on the obligations owing to the Green Law Firm, however, Barry and Ra-

chel Feinberg have made some payments to the Green Law Firm as well.

The Alleged Debtor and Robert Stein are jointly obligated to the Commercial Bank of West Port in the original principal amount of $105,000. Some of these payments have been made by Mr. Stein and the obligations to the Commercial Bank of West Port are current.

The following is a summary of W–2 income for Barry and Rachel Feinberg for the years indicated:

| Year | Barry | Rachel | Comments |
|------|-------|--------|----------|
| 1992 | $ 526,297 | $276,000 | Barry from multiple sources; Rachel from P.C. |
| 1993 | $1,146,194 | $204,066 | Barry from multiple sources; Rachel from P.C. |
| 1994 | $ 356,702 | $635,650 | Barry from multiple sources; Rachel had $5,650 from P.C. with the balance from Gateway |
| 1995 | $ 378,079 | $425,600 | Both from Gateway |
| 1996 | $ 200,292 | $196,705 | Both from Gateway |
| 1997 | $ 190,421 | $188,842 | Both from Gateway |

The following is a summary of the allocation of spousal income contained on the Missouri income tax returns for Barry and Rachel Feinberg:

| Year | Barry | Rachel |
|------|-------|--------|
| 1992 | 59% | 41% |
| 1993 | 84% | 16% |
| 1994 | 18% | 82% |
| 1995 | 33% | 67% |
| 1996 | 53% | 47% |
| 1997 | 53% | 47% |

All of the Judgment Creditors are in favor of the entry of an order for relief. The only creditor that appeared and opposed entry of an order for relief at this hearing was Commercial Bank of Westport.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157 and Local Rule 9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

The Involuntary Petition in this matter was filed by five entities, each of which is a holder of a claim against the Alleged Debtor that is not contingent as to liability. These claims aggregate at least $10,775 more than the value of any lien on property of the Debtor securing such claims held by the holders of such claims. **11 U.S.C. § 303(b)(1).**

 The existence of a bone fide dispute with respect to a creditor's claim disqualifies that creditor from proceeding as a petitioning creditor under Section 303 as to the portion of the claim that is disputed. A bona fide dispute exists if there are substantial factual and legal questions raised by the alleged debtor bearing upon the debtor's liability. *In re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991) (citations omitted). The objective of the Bankruptcy Court is to ascertain whether a dispute that is bona fide exists. *Id.* at 1365.

It is generally accepted that an unstayed or non-appealable final judgment is not subject to a bona fide dispute. *In re Cohn–Phillips, Ltd.,* 193 B.R. 757, 763 (Bankr.E.D.Va.1996) (citations omitted).

 It is not correct to hold that the pendency of an alleged debtor's appeal of a final judgment by itself creates a bona fide dispute. *See In re Drexler,* 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986). The Bankrupt-

cy Court is required to determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt; but the Court is not required to actually resolve any dispute. *In re Rimell,* 946 F.2d at 1365.

■ In the circumstances presented here, the Court has reviewed the record as a whole including the Alleged Debtor's exhibits, the testimony presented on behalf of the Alleged Debtor, and the Alleged Debtor's motion for a new trial and other post-trial motions. Based on this record, the Court has determined that there is not a factual or legal dispute as to the validity of the debt that is the final judgment in favor of the Petitioning Creditors for purposes of considering creditor qualifications under Section 303. Therefore, the claims of the Petitioning Creditors are not subject to a bone fide dispute; and these entities are not disqualified from prosecuting their petition for involuntary relief against the Alleged Debtor.

■ Under Section 303(h), the court shall enter an order for relief if the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute.

■ The Bankruptcy Code does not provide a definition for the term, "generally not paying." Courts have been reluctant to apply a purely mechanical test to determine if the petitioning creditors have established that an alleged debtor was generally not paying its debts on the date of filing of the involuntary petition. However, most determinations are based on a combination of factors that may be summarized as follows: the number of debts; the amount of delinquency; the materiality of the nonpayment; and the nature of the alleged debtor's conduct of its financial affairs. *In re Laclede Cab Co.,* 76 B.R. 687, 691 (Bankr.E.D.Mo.1987); *see also,* 15 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 303.14 [1], [1][a] and [1][b], pg. 303–77 (15th ed.1996). As a general

statement, " 'not paying debts' includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the Alleged Debtor's operations." *In re West Side Community Hospital, Inc.,* 112 B.R. 243, 257 (Bankr.N.D.Ill.1990).

■ As noted above, aside from the claims of the Judgment Creditors, all claims against the Alleged Debtor are being paid on a current basis by the Alleged Debtor, the Alleged Debtor's spouse, or through various business arrangements, by other entities or individuals. These debts include business expenses, credit cards, utility bills, home maintenance and care bills, legal bills and medical bills. The only claims not being paid are those that arose from the non-bankruptcy judgment. The testimony at this hearing indicated that although the judgments were entered as to each creditor separately, a recovery from the Alleged Debtor would be divided among five of the Judgment Creditors according to a separate agreement. Even though each Petitioning Creditor is the holder of a separate claim, in the circumstances presented here, the Alleged Debtor is essentially not paying one class of creditors whose individual judgments are being appealed. For essentially the same reasons set out above with respect to Section 303(b), the debts that are not being paid by the Alleged Debtor are not the subject of a bona fide dispute with respect to Section 303(h).

The Alleged Debtor is a young professional whose earning potential was not called into question during these proceedings. The Involuntary Petition here has requested reorganization under Chapter 11 rather than liquidation under Chapter 7, perhaps because of the realization that assets are and should be available to pay creditors. However, a distribution to creditors should also be available without the harsh consequences frequently associated with a bankruptcy proceeding.

The record presented in this proceeding has suggested that some of the asset transfers choreographed by the Alleged Debtor may be subject to avoidance actions under the Bankruptcy Code. Although a successful prosecution of these actions under the Bankruptcy Code would likely produce value for the estate, the record here has not suggested that this value cannot be realized through appropriate non-bankruptcy actions without the additional layer of Title 11 administrative expense. Consequently, the Court finds and concludes that the record has not established that the Alleged Debtor is generally not paying his debts as they become due as required by Section 303(h). The request to enter an Order for Relief will be denied.

There is no evidence to suggest that the petition was filed in bad faith. As determined above, the claims of the Petitioning Creditors were not subject to a bona fide dispute and there is no reason to believe that the petition was filed for an improper purpose. *See General Trading, Incorporated v. Yale Materials Handling Corporation,* 119 F.3d 1485, 1501 (11th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1380, 140 L.Ed.2d 526 (1998) (Creditors' concerns for protecting themselves against other creditors' obtaining disproportionate share of debtor's assets is proper purpose for filing an involuntary petition.).

 The Alleged Debtor's response includes an alternative request to dismiss or suspend the proceedings under Section 305. The burden of proof on abstention is on the alleged debtor. *In re Sherwood Enterprises, Inc. et al,* 112 B.R. 165, 167 (Bankr.S.D.Tex.1989). The alleged debtor carries an especially heavy burden given the non-appealability of a Section 305 order. *Id.; see also In re Manchester Heights Associates,* 140 B.R. 521, 522 (Bankr.W.D.Mo.1992) (citations omitted) (The power of abstention under Section 305 is an extraordinary power which is to be used only in extraordinary circumstances.).

In view of the determination that the Petitioning Creditors have not established that the Alleged Debtor is generally not paying his debts as they become due, dismissal under Section 303 is the more appropriate remedy. The request for relief under Section 305 will be denied.

**IT IS ORDERED** that the request of the Petitioning Creditors for an Order for Relief under Chapter 11 of the United States Bankruptcy Code is denied.

**IT IS FURTHER ORDERED** that the Involuntary Petition is dismissed; and that the Alleged Debtor's motion to dismiss or in the alternative to abstain or suspend this proceeding is denied; and that all other requests in this matter, including requests for compensation, reimbursement, or sanctions are denied.