### In re Wayne E. WHITESIDE, Debtor.

### MAG Business Services, Bentley Racing Products, Inc. and John D. Bentley, Movants,

v.

### Wayne E. Whiteside, Respondent.

### Bankruptcy No. 99–30488.

United States Bankruptcy Court,
W.D. Missouri,
Southwestern Division.

Nov. 3, 1999.

11. *Id.*

Max H. Glover, Webb City, MO, for plaintiff.

J. Kevin Checkett, Carthage, MO, for defendant.

### MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

On September 1, 1999, the Court issued a Memorandum Opinion and Order denying the Movants' Involuntary Petition against Wayne E. Whiteside ("Whiteside"), but reserved ruling on the issue of whether Whiteside is entitled to costs, attorney's fees and/or damages pursuant to 11 U.S.C. § 303(i) and ordered that issue to be heard on September 23, 1999. *In re Whiteside*, 238 B.R. 468 (Bankr.W.D.Mo.1999) (*"Whiteside I "*). The hearing was subsequently rescheduled and took place on October 19, 1999. Upon consideration of the oral arguments, evidence, pleadings and relevant law, the Court will award Whiteside his costs and attorney's fees, but finds that an award of damages is not warranted.

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Rule 7052, Fed.R.Bankr.P. The findings of fact and conclusions of law contained in this

Court's Memorandum Opinion and Order in *Whiteside I* are incorporated by reference.

## FACTUAL BACKGROUND

In addition to the facts contained in this Court's Memorandum Opinion and Order as reported in *Whiteside I,* a short summary of the circumstances leading up to the filing of the involuntary petition is necessary to a discussion of the issues now before the Court.

Stated in its simplest terms, this matter arose from the unsuccessful sale of a business. On May 11, 1997, John D. Bentley ("Bentley") signed a listing agreement giving MAG Business Services, Inc. ("MAG") the sole and exclusive right to sell the Elk River Paradise Marina ("the marina") owned by Bentley Racing Products, Inc. Some time around May 1998, Wayne E. Whiteside met with Marion Smith ("Smith"), a co-owner of MAG, and filled out a buyer's profile sheet. According to Smith's testimony, Whiteside represented that he had at least $250,000.00 in assets to help fund the purchase of a business. Although Smith did not produce Whiteside's buyer profile sheet to prove this fact, Whiteside testified that he had $250,000.00 from a pension plan and severance package available to invest in the marina.

Whiteside entered into negotiations with Bentley and MAG for the purchase of the marina and made an offer on the marina on June 26, 1998. Whiteside and Bentley signed a lease/purchase agreement for the sale of the marina that same day. The agreement provided for, *inter alia,* a purchase price of $3,000,000.00, $50,000.00 to be paid at the time of signing and the rest over time; a supplemental lease agreement to enable Whiteside to have "access" to the marina while he sought financing; a closing deadline of October 31, 1998; and a $10,000.00 fee to be paid to MAG in the event the purchase was not completed. Whiteside took over the operations of the marina soon after the signing of the lease/purchase agreement, but the pur-

chase was never completed. Whiteside left the marina on April 1, 1999, after Bentley demanded that he leave. The Movants allege that between the time Whiteside took over the marina and the time when Bentley demanded that Whiteside vacate the business, Whiteside failed to pay bills, sold boats out of trust, sold boats that belonged to Bentley personally and generally squandered the marina's assets. Although none of these allegations was conclusively proven at the hearing, Whiteside testified that at the time he left the marina he had used up all of his personal assets.

Whiteside testified that after leaving the marina, he was able to get a new job in Little Rock, Arkansas, earning $1,500.00 per week, but eventually lost that job as a result of absences caused by his need to defend the involuntary petition. Whiteside claims that he missed ten days of work and incurred $1,000.00 in travel costs as a result of the petition being filed against·him.

On July 26, 1999, the Court held a hearing to determine the merits of the involuntary petition, and issued an order denying the petition on September 1, 1999. The Court now takes up the issue of whether Whiteside·is entitled to the costs, attorney's fees and/or damages that resulted from the successful defense of the involuntary petition.

## DISCUSSION

The award of costs, attorney's fees and damages to a "debtor" who successfully defends against an involuntary bankruptcy petition is controlled by 11 U.S.C. § 303(i):

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) a reasonable attorney's fee; or

(2) against any petitioner that filed the petition in bad faith, for—

    (A) any damages proximately caused by such filing; or

    (B) punitive damages.

11 U.S.C. § 303(i).

    ■ Whiteside seeks all of the remedies provided for in the statute: costs, attorney's fees, damages and punitive damages. Courts applying § 303(i) uniformly interpret the term "or" to not be exclusive and hold that a court may grant any and all of the damages provided for under this provision. *In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr.N.D.Ill.1989) ("The legislative history under this section makes clear that the use of the term 'or' is not exclusive in this paragraph.") (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 324 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5820, 6280). *See also, In re Johnston Hawks Ltd.*, 72 B.R. 361, 366 (Bankr.D.Hawai'i 1987); *In re Camelot, Inc.*, 25 B.R. 861, 868 (Bankr.E.D.Tenn. 1982); *In re Ramsden*, 17 B.R. 59, 61 (Bankr.N.D.Ga.1981). However, this Court finds that although an award of costs and attorney's fees is warranted under the present circumstances, because Whiteside has not adequately established that the Movants filed the Involuntary petition in bad faith, an award of damages, actual or punitive, is not.

1. Attorney's Fees.

    ■ Under § 303(i)(1), the award of attorney's fees and costs does not require a finding of bad faith and is intended to reimburse an alleged debtor for the expenses necessarily incurred in successfully defending an improper involuntary petition. 11 U.S.C. § 303(i)(1); *In re Laclede Cab Company*, 76 B.R. 687, 692–93 (Bankr. E.D.Mo.1987). Whether to award costs and reasonable attorney's fees is within the discretion of the court. *In re Willow Lake Partners II, L.P.*, 156 B.R. 638, 644 (Bankr.W.D.Mo.1993) (citing *Bankers Trust Company BT Service Company v. Nordbrock (In re Nordbrock)*, 772 F.2d 397, 400 (8th Cir.1985)).

    ■ In the present case, the Court finds that Whiteside should be reimbursed for the expenses incurred in successfully defending the improperly filed involuntary petition. In addition to $5,118.00 in attorney's fees [1] and $153.39 in costs directly related to the defense of the Petition, the Court will also award Whiteside $1,000.00 in out-of-pocket expenses, an amount that reflects Whiteside's reasonable travel expenses and was not contested at the October 19 hearing.

2. Actual and Punitive Damages.

    ■ In order to recover damages under § 303(i)(2), the defendant of an unsuccessful involuntary petition must show that the petition was filed in bad faith. 11 U.S.C. § 303(i)(2). Two basic tests have been used to determine whether bad faith exists: (1) the "improper purpose" test; and (2) the "improper use" test.[2] *See In re Better Care, Ltd.*, 97 B.R. at 410–11. The improper purpose test asks whether the petition was filed for a non-bankruptcy purpose, *Basin Electric Power Cooperative v. Midwest Processing Company*, 769 F.2d 483, 487 (8th Cir.1985); *In re Willow Lake Partners II, L.P.*, 156 B.R. at 644, or was "motivated by ill will, malice or for the purpose of embarrassing or harassing the

---

**1.** This figure represents the total attorney's fees from June 18, 1999, to the date of the first hearing on July 26, 1999, plus $135.00 in fees from September 22, 1999.

**2.** The court in *In re Better Care, Ltd.*, identifies a third test based on Bankruptcy Rule 9011 (which is patterned after Federal Rule of Civil Procedure 11): "Rule 9011 proscribes conduct undertaken 'for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.' That definition parallels the type of conduct held to constitute bad faith under the improper purpose test." *In re Better Care, Ltd., supra.* But, as that court suggests, the Rule 9011 test is only a specific application of the improper purpose test.

debtor." *In re Better Care, Ltd., supra. See e.g., Basin Electric Power Cooperative, supra* at 486 (involuntary bankruptcy used to gain advantage in a contract dispute found to be improper); *In re Laclede Cab Company,* 76 B.R. at 693 (involuntary petition used to gain advantage in labor negotiations considered improper); *In re Advance Press & Litho, Inc.,* 46 B.R. 700, 705 (Bankr.D.Colo.1984) (involuntary petition used for revenge is improper); *In re Better Care, Ltd.,* 97 B.R. at 412 (involuntary petition used to obtain control of corporation is improper).

The improper use test asks whether the creditors' actions were an improper use of the Bankruptcy Code as a substitute for customary collection procedures. *See In re Advance Press & Litho, Inc.,* 46 B.R. at 703; *In re SBA Factors of Miami, Inc.,* 13 B.R. 99, 101 (Bankr.S.D.Fla.1981).

It has been suggested that the improper use test differs from the improper purpose test because the former encompasses conduct which is not itself improper, i.e., debt collection. "Such conduct becomes improper only because it does not justify the particular remedy of involuntary bankruptcy." *In re Better Care, Ltd.,* 97 B.R. at 411. However, the difference between the two tests is more semantic than substantive. By definition, the *use* of an involuntary bankruptcy for an improper purpose is an "improper use;" they are two sides of the same coin. In other words, by using the term "improper" in a narrow sense to mean inappropriate or unjustified for the purposes which the remedy of involuntary bankruptcy was intended, rather than in a general sense of being wrong or unlawful, the situation identified by the improper use test is encompassed into the category of improper purposes; it is one example of an improper purpose, since the remedy of involuntary bankruptcy was not intended to be a substitute for ordinary debt collection procedures. *See In re Nordbrock,* 772

F.2d 397, 400 (8th Cir.1985) ("A creditor does not have a special need for bankruptcy relief if it can go to state court to collect a debt."). For sake of convenience, and in line with the suggestion that the Eighth Circuit has adopted the improper purpose test, *see In re Willow Lake Partners II., L.P.,* 156 B.R. at 645, this Court will adopt the improper purpose label with the understanding that it encompasses both tests.

■ Upon consideration of the record, the Court determines that the involuntary petition was not filed for an improper purpose. The Movants testified that their purpose in filing the involuntary petition against Whiteside was to "find out where their money went and to get some of their money back." According to the Movants, Whiteside represented that he had substantial assets but now claims he has none and cannot account for the depletion of Bentley Racing Products, Inc.'s assets or the proceeds from the sale of certain boats purportedly owned by John D. Bentley. The Movants have not displayed any personal animosity toward Whiteside, just an understandable frustration with Whiteside because they believe that he owes them money and he has failed to explain what happened to some of the marina assets. And while the Movants' choice to use the involuntary bankruptcy process instead of customary debt collection procedures might constitute an improper purpose (or use), the evidence showed that this choice was made on the advice of their attorney in this matter, Max Glover, and reliance upon counsel's advice has been held to preclude a finding of bad faith where there is an absence of malice or ill will.[3] *See In re Better Care, Ltd.,* 97 B.R. at 412 ("[A]dvice of counsel can excuse improper-use bad faith ..."); *Jaffe v. Wavelength, Inc. (In re Wavelength, Inc.),* 61 B.R. 614, 620 (9th Cir. BAP 1986); *In re Advance Press & Litho, Inc.,* 46 B.R. at 705. The Court

---

**3.** The evidence adduced at the hearing (albeit hearsay) suggests that the decision to pursue an involuntary bankruptcy was also influenced by another attorney, Marion Smith's husband.

has not found any evidence of malice or ill will in this case.

Based on the foregoing, the Court concludes that the involuntary petition was not filed in bad faith, and therefore cannot be grounds for the award of damages pursuant to § 303(i)(2).

Accordingly, it is

**ORDERED** that Movants John D. Bentley, Bentley Racing Products, Inc., and MAG Business Services be and are hereby found to be equally responsible for the improper filing of the Involuntary Petition against Respondent Wayne E Whiteside, and Respondent Wayne E. Whiteside is hereby awarded judgment pursuant to 11 U.S.C. § 303(i)(1) against the said Movants, severally, in the total sum of $6,271.39 for Respondent's attorney's fees and costs in this proceeding. It is

**FURTHER ORDERED** that Respondent Whiteside's request for actual and punitive damages pursuant to 11 U.S.C. § 303(i)(2) is hereby denied.

**SO ORDERED.**